1  **REESE RICHMAN LLP**
   Michael R. Reese (206773)
2  michael@reeserichman.com
   230 Park Avenue, 10th Floor
3  New York, New York 10169
   Telephone: (212) 579-4625
4  Facsimile: (212) 253-4272

5
   **WHATLEY DRAKE & KALLAS, LLC**
6  Deborah Clark-Weintraub
   dweintraub@wdklaw.com
7  1540 Broadway, 37th Floor
   New York, New York  10036
8  Telephone:  (212) 447-7070
   Facsimile:   (212) 447-7077
9

10 *Counsel for Plaintiffs*
11 [Additional counsel listed on signature page]

12             **UNITED STATES DISTRICT COURT**

13       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14               **SAN FRANCISCO DIVISION**

15
   GREGORY YOUNG; ODETTA      )
16 YOUNG; EDWARD HUYER and    ) Case No. _____
   CONNIE HUYER, on behalf of  )
17 themselves and all others similarly )
   situated                    ) **COMPLAINT**
18                             ) **CLASS ACTION**
                               )
19            Plaintiffs,       )
                               )
20      vs.                    )
                               )
21 WELLS FARGO & CO., and     )
   WELLS FARGO HOME          )
22 MORTGAGE, INC.             )
                               )
23            Defendants.      ) **DEMAND FOR JURY TRIAL**
                               )
24                             )
                               )
25                             )
                               )
26 _____  )
27
28

1    Plaintiffs Gregory Young, Odetta Young, Edward Huyer and Connie Huyer
2   ("Plaintiffs"), on behalf of themselves and all others similarly situated, by their
3   undersigned attorneys, allege as follows:

4    1.    This is a class action brought by Plaintiffs, on behalf of themselves and
5   other similarly situated borrowers, against Wells Fargo & Co. and Wells Fargo Home
6   Mortgage, Inc. (collectively "Wells Fargo" or "Defendants") under the Racketeer
7   Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, and
8   California's consumer protection laws, including California's Unfair Competition
9   Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), seeking redress for the illegal
10   acts of the Defendants which have resulted in a loss of their money, and for
11   declaratory and injunctive relief to end those practices and prevent further losses to
12   the class and future borrowers.

13                          **NATURE OF THE CASE**

14    2.    As set forth more fully herein Defendants engaged in a fraudulent
15   scheme during the Class Period in violation of federal and state law to exact improper,
16   unwarranted and unreasonable fees from Plaintiffs and other class members who had
17   fallen into arrears on their mortgages.  Specifically, Defendants utilized a computer
18   system to automatically assess fees for late payments and property inspections without
19   regard to the terms of the borrowers' mortgage loans or the relevant circumstances.
20   Instead of being based upon reasonable parameters, the computer system was
21   programmed to assess as many charges as possible and to pay first all outstanding fees
22   and costs before satisfying interest and principal.   In this manner, Defendants
23   victimized and further increased the indebtedness of persons who were already in
24   danger of losing their homes to foreclosure.

25    3.    Defendants' unlawful practices have not gone unnoticed. Recently, the
26   United States Bankruptcy Court for the Eastern District of Louisiana has issued an
27   opinion sanctioning Defendant Wells Fargo Home Mortgage, Inc. for its unlawful
28   conduct at issue here. *See In re Dorothy Chase Stewart*, No. 07-11113, 2008 WL

CLASS ACTION COMPLAINT

2676961 (Bkrtcy. E.D. La. July 9, 2008) ("*Stewart*"). Plaintiffs hereby incorporate
by reference the findings of fact and opinion in *Stewart*.

4.     In the *Stewart* case, the court found that Defendant Wells Fargo Home
Mortgage, Inc.'s unlawful, automated practice of charging fees to distressed
borrowers had resulted in the assessment of multiple late fees for a single missed
payment as well as assessment of an inspection fee on average once every month and
a half over a seven year period, deepening the debtor's default although the
borrower's property always had been occupied and in good condition. Moreover, the
inspections generated by Defendants' automated system were never read or reviewed
by any Wells Fargo employee, further demonstrating that they were simply a profit
generating mechanism and were not reasonably necessary to safeguard the lender's
interests.

5.     In addition, the Senate Judiciary Subcommittee on Administrative
Oversight and the Courts recently convened hearings to consider allegations that
mortgage lenders and mortgage servicing companies, including Defendant Wells
Fargo Home Mortgage, Inc., have deepened the foreclosure crisis and improperly used
the bankruptcy system to collect unwarranted and unreasonable fees. In his opening
statement, Senator Charles E. Schumer aptly observed that as a result of these
unlawful practices vulnerable homeowners trying desperately to stay afloat are instead
suffering a "death by a thousand fees."

6.     Defendants have profited enormously from this fraudulent scheme. As
the *Stewart* court observed, the assessment of late and inspection fees on home
mortgage loans it services generates hundreds of millions of dollars in revenues for
Wells Fargo to the detriment of homeowners.

7.     Plaintiffs have brought this action to put an end to Defendants' scheme
and to recover the improper, unwarranted and unreasonable fees charged to and paid
by Plaintiffs.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. §§1961, 1962 and 1964, 28 U.S.C. §§1331, 1332 and 1367, and 15 U.S.C. §15. This Court has personal jurisdiction over the Defendants pursuant to 18 U.S.C. §§1965(b) and (d). Diversity jurisdiction is also conferred over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, § 7, 119 Stat. 13 ("CAFA"). It is appropriate to apply California's UCL, False Advertising Law ("FAL") and Consumer Legal Remedies Act ("CLRA") to protect a nationwide class because the wrongdoing alleged herein occurred in significant part in California, and Defendant Wells Fargo & Co. has its principal place of business within the state. The Court has personal jurisdiction over the Defendants because Wells Fargo & Co. has its principal place of business within California, Wells Fargo Home Mortgage, Inc. does business in California, and misconduct occurred in significant part in California.

9.     Venue is proper in this district pursuant to 18 U.S.C. §1965(a), 28 U.S.C. §1391(b), 15 U.S.C. §22, and 28 U.S.C. §1391 because some of the Defendants are found, do business or transact business within this district, and conduct the interstate trade and commerce described below in substantial part within this district.

10.     During all or part of the period in which the events described in this Complaint occurred, each of the Defendants participated in a scheme to defraud Plaintiffs and other members of the Class in a continuous and uninterrupted flow of interstate commerce.

11.     The activities of Defendants were within the flow of, and had a substantial effect on, interstate commerce.

CLASS ACTION COMPLAINT

**PARTIES**

12.    Plaintiffs Gregory Young and Odetta Young are a married couple with children who reside in Hillsborough, New Jersey. During the Class Period, Mr. and Mrs. Young purchased a new home and obtained a mortgage that was serviced by Defendant Wells Fargo Home Mortgage, Inc. Each month, the Youngs received a monthly mortgage statement from Wells Fargo through the U.S. mail reflecting the amount of the current payment due on their mortgage and the amount of any payment remitted by the Youngs and received by Wells Fargo since the prior month's statement. Over the life of the loan, the Youngs occasionally faced difficulty in making timely payments on their mortgage. On each of these occasions, the monthly statement received by the Youngs reflected additional amounts owed for late fees and inspections of the Youngs' property unlawfully assessed by Wells Fargo pursuant to the fraudulent scheme alleged herein.

13.    Plaintiffs Edward and Connie Huyer are a married couple who reside in Florence, South Carolina. During the Class Period, Mr. and Mrs. Huyer purchased a home and obtained a mortgage that was serviced by Defendant Wells Fargo Home Mortgage, Inc. Each month, the Huyers received a monthly mortgage statement from Wells Fargo through the U.S. mail reflecting the amount of the current payment due on their mortgage and the amount of any payment remitted by the Huyers and received by Wells Fargo since the prior month's statement. Over the life of the loan, the Huyers occasionally faced difficulty in making timely payments on their mortgage. On each of these occasions, the monthly statement received by the Huyers reflected additional amounts owed for late fees and inspections of the Huyers property unlawfully assessed by Wells Fargo pursuant to the fraudulent scheme alleged herein.

14.    Defendant Wells Fargo & Co. is a diversified financial services company headquartered in San Francisco, California that provides banking,

CLASS ACTION COMPLAINT

insurance, investments, mortgage banking and consumer finance through banking stores, the internet and other distribution channels to customers, businesses and other institutions in all 50 states and in other countries.  Wells Fargo & Co. is the parent corporation of Defendant Wells Fargo Home Mortgage, Inc.  Wells Fargo & Co. exercises specific and financial control over the operations of Defendant Wells Fargo Bank Home Mortgage, Inc., dictates the policies and practices of Wells Fargo Home Mortgage, Inc., exercises power and control over the specific activities upon which the claims herein are based, and is the ultimate recipient of the ill-gotten gains described herein.

15.     Defendant Wells Fargo Home Mortgage, Inc., is a subsidiary of Wells Fargo & Co.  Wells Fargo Home Mortgage, Inc. conducts mortgage servicing operations.  Wells Fargo Home Mortgage, Inc. serviced the Plaintiffs' mortgage loans during the Class Period.

## FACTUAL ALLEGATIONS

16.     Every home mortgage at issue here contains provisions specifying when payments are due and when they are considered late, and provides that only reasonable fees may be assessed if payments are not timely.

17.     Plaintiffs' notes are typical in this regard. The Plaintiffs' mortgage payments were due the first of each month and were considered late if they were not received by Wells Fargo by the end of fifteen calendar days after the date they were due.  In the event of a late payment, the Plaintiffs' notes provided that a single late charge in the amount of 5% of the overdue payment would be assessed. The Plaintiffs' mortgages further permitted Wells Fargo or its agents to (i) "make reasonable entries upon and inspections of the Property;" (ii) "do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property;" and (iii) "charge [the] Borrower fees for services performed in connection with [the] Borrower's default, for the purpose of protecting [the] Lender's interest in the Property . . ., including, but not limited to, attorneys' fees,

CLASS ACTION COMPLAINT

1  property inspection and valuation fees." Upon information and belief, in these

2  respects, Plaintiffs' notes were substantially identical to the note of the debtor in

3  the *Stewart* case.

4      18.     The vast majority of borrowers make their monthly mortgage

5  payments to mortgage servicing companies such as Wells Fargo rather than their

6  original lender or the current holder of the mortgage note. Wells Fargo services

7  10.3 million residential mortgage customers, or 1 out of 7 mortgages in America,

8  making it the second largest home mortgage servicer in the United States.

9      19.     As part of its mortgage servicing operations, Wells Fargo collects

10  monthly payments from borrowers consisting of principal and interest, taxes and

11  insurance, and other fees and charges that may have been assessed, and disburses

12  these payments to the appropriate parties such as lenders, investors, taxing

13  authorities, insurers, and other relevant persons.

14      20.     Wells Fargo earns revenue from mortgage loan servicing in three

15  ways. First, Wells Fargo receives a fixed fee for each loan that is determined by

16  the servicing agreements between Wells Fargo and the investors or note holders.

17  Second, Wells Fargo earns "float" income from accrued interest between when

18  consumers pay and when those funds are remitted to lenders, investors, taxing

19  authorities, insurers, and other relevant parties. Third, Wells Fargo retains all, or

20  part, of certain fees such as late charges that consumers pay.

21      21.     Because Wells Fargo earns "float" income on funds held and

22  retains all or part of certain fees that borrowers must pay, Wells Fargo has an

23  incentive to impose as many fees as possible on consumers.

24      22.     Wells Fargo manages and administers its residential mortgage

25  servicing tasks with practically no human intervention but instead through the use

26  of a general computer system programmed to assess as many fees as possible.

27      23.     Entries on home loan accounts serviced by Wells Fargo are tracked

28  with a licensed computer software platform known as Fidelity Mortgage Servicing

Package (also known as "Fidelity MSP"). When Wells Fargo receives a payment for a mortgage loan account from a borrower, that payment is entered into the Fidelity MSP software and the payment is deposited. Fidelity MSP then applies the payment to the borrower's account.

24.     Guidelines for the management of loans serviced by Wells Fargo – *e.g.*, when late fees are due and when to impose inspection fees – are governed by the Fidelity MSP used by Wells Fargo.

25.     For example, if a borrower is late making a payment, Wells Fargo's computer system will automatically order a property inspection and charge the borrower's account after the loan has been in default for a certain number of days regardless of whether there is a reasonable need for an inspection. In most cases, the computer system will automatically recommend a property inspection if the borrower has been in default for between 20 to 45 days. No person or employee of Wells Fargo is involved in the determination of whether a property inspection is reasonably necessary to protect the lender's interest in the property.

26.     In addition, the Wells Fargo computer system will continue to order property inspections every 20 to 45 days until the borrower cures the default. For example, if a borrower misses one month's periodic payment, but continues to consistently make monthly periodic payment thereafter, he or she is considered by Wells Fargo to be in default on the loan until the initial default is cured. Therefore, although a borrower continues to make regular periodic payments after having only missed one month's payment, the Wells Fargo computer system will continue to automatically generate work orders for property inspections until the initial default is cured.

27.     Further, because the property inspections are ordered based on a computer program rather than human decision-making, property inspections may be performed on a borrower's property regardless of the fact that the property has

1  already been inspected numerous times and was deemed occupied, well-maintained
2  and in good condition.

3      28.    As the United States Bankruptcy Court for the Eastern District of
4  Louisiana has held in *Stewart*, Wells Fargo's practice of using computer software
5  to automatically trigger property inspections once a borrower is a certain number
6  of days in default - and to continuously order those inspections thereafter until the
7  default is cured - is neither reasonable nor appropriate as this practice is not
8  designed to protect the lender's interest.  Rather, these automatic inspections are
9  actually conducted to generate additional fees and thereby create more "float"
10  income, boosting Wells Fargo's bottom line.

11      29.    That these computer-generated inspections are unreasonable, confer no
12  benefit on the lender, and serve no discernible purpose other than to generate revenue
13  for Wells Fargo is further evidenced by the limited nature of the inspections
14  themselves.  The property inspections ordered by the Wells Fargo computer
15  system are mere "drive-by" inspections, *i.e.*, the inspector "drives by" the property
16  ostensibly to assess whether the house is occupied, being maintained, and has not
17  been damaged – a practice that provides little, if any, real opportunity to
18  determine whether the lender's interest in the property is at risk.  Indeed, Wells
19  Fargo personnel do not read the inspection reports.

20      30.    Lastly, Wells Fargo conceals these inspection fees from borrowers
21  by listing them on the borrower's statement only as "other charges."  Only after
22  the borrower pays these "other charges" does Wells Fargo reveal to borrowers that
23  they have been charged fees for property inspections.
24  //
25  //
26  //
27  //
28  //

## RICO ALLEGATIONS
## THE ENTERPRISE

31.    Defendants are all "persons" within the meaning of 18 U.S.C. § 1961(3).

32.    Based upon Plaintiffs' current knowledge, the following persons constitute a group of individuals associated in fact that will be referred to herein as the "Wells Fargo Enterprise": (1) Wells Fargo, and (2) vendors, including First American Real Estate Information Services, Inc., Fidelity National Financial, Inc., and Mortgage Contracting Services, LLC, which conducted the computer-generated property inspections billed to Plaintiffs and Class members complained of herein.

33.    The Wells Fargo Enterprise is an ongoing organization that engages in, and whose activities affect, interstate commerce.

34.    The members of the Wells Fargo Enterprise function as a continuing unit as described below and share the common purpose of maximizing their profits from fees charged to Plaintiffs and Class members.

35.    While all Defendants participate in and are members and part of the Wells Fargo Enterprise, they also have an existence separate and distinct from the enterprise.

36.    Defendants control and operate the Wells Fargo Enterprise by, among other things, programming their computer system to automatically order property inspections by vendors with respect to loans deemed past due; sending out vendors to inspect the property; arranging uploads of completed reports of the property inspections directly into the automated system; assessing fees to borrowers for property inspections; collecting payments from borrowers that include inspection fees; and paying vendors for each property inspection completed using funds received from borrowers.

37.    The Wells Fargo Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engage.

CLASS ACTION COMPLAINT

**PREDICATE ACTS**

38.     Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud).  As set forth below, Defendants have engaged, and continue to engage, in conduct violating each of these laws to effectuate their scheme.

39.     Additionally, in order to make their scheme effective, each of the Defendants sought to and did aid and abet the others in violating the above laws within the meaning of 18 U.S.C. § 2.  As a result, their conduct is indictable under 18 U.S.C. § 1341 and 18 U.S.C. § 1343, on this additional basis.

**VIOLATIONS OF 18 U.S.C. § 1341 and 18 U.S.C. § 1343**

40.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, Defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carriers, and received matter and things from the Postal Service or commercial interstate carriers, including but not limited to agreements, monthly mortgage statements, correspondence, checks, and inspection reports.

41.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire, matter and things, including but not limited to agreements, monthly mortgage statements, correspondence, wire transfers, and inspection reports, and made or caused to be made false statements over the telephone, facsimile, electronic mail, and internet.

42.     The matter and things sent by Defendants via the Postal Service, commercial carrier, wire, or other interstate electronic media included, *inter alia*:

1   agreements, monthly mortgage statements, correspondence, payments and inspection
2   reports.

3        43.     Other matter and things sent through or received via the Postal Service,
4   commercial carrier, wire, or other interstate electronic media by Defendants included
5   information or communications in furtherance of or necessary to effectuate the
6   scheme.

7        44.     Defendants' misrepresentations, acts of concealment and failures to
8   disclose were knowing and intentional, and made for the purpose of deceiving
9   Plaintiffs and the members of the Class and obtaining their property for Defendants'
10   gain.

11       45.     Defendants either knew or recklessly disregarded the fact that the
12   misrepresentations and omissions described above were material, and Plaintiffs and
13   the Class relied upon the misrepresentations and omissions as set forth above.

14       46.     As a result, Defendants have obtained money and property belonging
15   to the Plaintiffs and Class members, and Plaintiffs and the Class have been injured in
16   their business or property by the Defendants' overt acts of mail and wire fraud, and by
17   their aiding and abetting each other's acts of mail and wire fraud.

18                       **PATTERN OF RACKETEERING ACTIVITY**

19       47.     The Defendants have engaged in a "pattern of racketeering activity," as
20   defined by 18 U.S.C. § 1961(5), by committing or aiding and abetting in the
21   commission of at least two acts of racketeering activity, *i.e.,* indictable violations of
22   18 U.S.C. §§ 1341 and 1343 as described above, within the past four years. In fact,
23   each of the Defendants has committed or aided and abetted in the commission of
24   thousands of acts of racketeering activity. Each act of racketeering activity was
25   related, had a similar purpose, involved the same or similar participants and method of
26   commission, had similar results and impacted similar victims, including Plaintiffs and
27   Class members.

28

CLASS ACTION COMPLAINT

48.     The multiple acts of racketeering activity that Defendants committed or aided and abetted in the commission of, were related to each other, and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

### RICO VIOLATIONS

49.     Section 1962(a) of RICO provides that "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity … in which such person has participated as a principal within the meaning of § 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."

50.     As set forth above, Defendants receive income from their participation as principals in an extensive pattern of racketeering activity.

51.     That income is reinvested to finance future racketeering activity and the future operation of the Wells Fargo Enterprise.

52.     Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity …"

53.     Through the patterns of racketeering activities outlined above, the Defendants have also conducted and participated in the affairs of the Wells Fargo Enterprise.

54.     Each of the Defendants agreed to participate, directly or indirectly, in the conduct of the affairs of the Wells Fargo Enterprise through a pattern of racketeering activity comprised of numerous acts of mail fraud and wire fraud, and each Defendant so participated in violation of 18 U.S.C. § 1962(c).

- 12 -

1    55.    Each Defendant further agreed to use or invest, directly or indirectly,

2 part of the income derived from their acts of mail fraud and wire fraud, which

3 constituted a pattern of racketeering activity, in the establishment, operation and

4 expansion of the Wells Fargo Enterprise, and has done so in violation of 18 U.S.C. §

5 1962(a).

6 **CLASS ACTION ALLEGATIONS**

7    56.    Plaintiffs sue on their own behalf and on behalf of a class of persons

8 under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, as a class

9 action on behalf of a nationwide class defined as all persons who were charged

10 computer-generated fees by Wells Fargo as a result of a late payment of their

11 mortgage.

12    57.    Excluded from the Class are Defendants, any entity in which a

13 defendant has a controlling interest or is a parent or subsidiary of, or any entity that is

14 controlled by a Defendant, and any Defendant's officers, directors, employees,

15 affiliates, legal representatives, heirs, predecessors, successors, and assigns.

16    58.    Plaintiffs do not know the exact size or identities of the proposed

17 Class, since such information is in the exclusive control of Defendants. Plaintiffs

18 believe that the Class encompasses many thousands or tens of thousands of

19 individuals who are geographically dispersed throughout the United States. Therefore,

20 the proposed Class is so numerous that joinder of all members is impracticable.

21    59.    All members of the Class have been subject to and affected by the

22 same practices and policies described herein. There are questions of law and fact that

23 are common to the Class, and predominate over any questions affecting only

24 individual members of the Class. These questions include, but are not limited to, the

25 following:

26    • The nature, scope and operations of Defendants' wrongful

27      policies;

28

- 13 -

CLASS ACTION COMPLAINT

- Whether Defendants aided and abetted each other in furtherance of the unlawful acts alleged herein;

- Whether Defendants have engaged in mail and wire fraud;

- Whether Defendants engaged in a pattern of racketeering activity;

- Whether the Wells Fargo Enterprise is an enterprise within the meaning of 18 U.S.C. § 1961(4);

- Whether Defendants have used or invested income from their racketeering activities to establish or operate the Wells Fargo Enterprise in violation of 18 U.S.C. § 1962(a);

- Whether Defendants conducted or participated in the affairs of the Wells Fargo Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c);

- Whether Defendants' overt and/or predicate acts in furtherance of the aiding and abetting and/or direct acts in violation of 18 U.S.C. §§ 1962 (a) and (c) proximately caused injury to the Plaintiffs' and Class members' business or property;

- Whether Wells Fargo had a policy and practice of fraudulently charging persons in arrears unlawful and unreasonable inspection fees;

- Whether the Court can enter declaratory and injunctive relief; and

- The proper measure of damages.

60.     The claims of the named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that both the Plaintiffs and the other members of the Class were subject to the same wrongful policies and practices by Defendants.

61.     The individual named Plaintiffs will fairly and adequately represent the interests of the Class. They are committed to the vigorous prosecution of the Class'

- 14 -

1  claims and have retained attorneys who are qualified to pursue this litigation and have

2  experience in Class actions.

3        62.     The prosecution of separate actions by individual members of the Class

4  would create a risk of adjudications with respect to individual members of the Class

5  which would, as a practical matter, be dispositive of the interests of other members of

6  the Class who are not parties to the action, or could substantially impair or impede

7  their ability to protect their interests.

8        63.     The prosecution of separate actions by individual members of the Class

9  would create a risk of inconsistent or varying adjudications with respect to individual

10  members of the Class, which would establish incompatible standards of conduct for

11  the parties opposing the Class.  Such incompatible standards and inconsistent or

12  varying adjudications, on what would necessarily be the same essential facts, proof

13  and legal theories, would also create and allow to exist inconsistent and incompatible

14  rights within the plaintiff Class.

15        64.     The Defendants have acted or refused to act on grounds generally

16  applicable to the Class, making final declaratory or injunctive relief appropriate.

17        65.     The questions of law and fact common to members of the Class

18  predominate over any questions affecting only individual members.

19        66.     Notice to the proposed class can be achieved through the U.S. mail to

20  the addresses of the class members that are kept within Defendants' records.  Notice

21  can also be supplemented via publication.

22        67.     A Class action is superior to other available methods for the fair and

23  efficient adjudication of the controversies herein in that:

- Individual claims by the Class members are impractical as the costs of pursuit far exceed what any one individual Plaintiff or Class member has at stake.

- As a result, individual members of the Class have no interest in prosecuting and controlling separate actions.

- 15 -

- It is desirable to concentrate litigation of the claims herein in this forum.
- The proposed Class action is manageable.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF RICO 18 U.S.C. § 1962(a)

68.     Plaintiffs incorporate and reallege the paragraphs above as if fully set out herein.

69.     This claim for relief arises under 18 U.S.C. § 1964(a).

70.     As set forth above, Defendants have violated 18 U.S.C. § 1962 (a) by using and investing income received from a pattern of racketeering, directly or indirectly, to establish and operate the Wells Fargo Enterprise, which is engaged in, and whose activities affect, interstate commerce.

71.     As a direct and proximate result, Plaintiffs and Class members have been injured in their business or property by both the predicate acts which make up the Defendants' patterns of racketeering activity and their investment and reinvestment of income therefrom to operate, expand and perpetuate the Wells Fargo Enterprise.

72.     Specifically, Plaintiffs and Class members have been injured in their business or property in a variety of ways including paying unlawful and unreasonable inspection and late fees.

## COUNT II

## VIOLATION OF RICO 18 U.S.C. § 1962(c)

73.     Plaintiffs incorporate and reallege the paragraphs above as if fully set out herein.

74.     This claim for relief arises under 18 U.S.C. § 1964(c).

CLASS ACTION COMPLAINT

75.     As set forth above, Defendants have violated 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the Wells Fargo Enterprise through a pattern of racketeering.

76.     As a direct and proximate result, Plaintiffs and Class members have been injured in their business or property by both the predicate acts which make up the Defendants' patterns of racketeering activity and their investment and reinvestment of income therefrom to operate, expand and perpetuate the Wells Fargo Enterprise.

77.     Specifically, Plaintiffs and Class members have been injured in their business or property in a variety of ways, including paying unlawful and unreasonable inspection and late fees.

## COUNT III

### VIOLATION OF 18 U.S.C. § 2 BY SEEKING TO AND AIDING AND ABETTING IN THE VIOLATION OF 18 U.S.C. § 1962(a) AND (c)

78.     Plaintiffs incorporate and reallege the paragraphs above as if fully set out herein.

79.     This claim arises under 18 U.S.C. § 1964(c).

80.     As set forth above, Defendants knowingly, and with shared intent, sought to, and have, aided and abetted each of the other Defendants in the commission of predicate acts, in engaging in a pattern of racketeering activity, and in violation of U.S.C. § 1962(a) and (c) as described above.

81.     As a result, under 18 U.S.C. § 2, the RICO violations of each Defendant are those of the others as if they had been committed directly by them.

82.     As a direct and proximate result of the fact that each Defendant aided and abetted the others in violating 18 U.S.C. § 1962 (a) and (c), Plaintiffs and Class members have been injured in their business or property by both the predicate acts which make up the Defendants' patterns of racketeering and their investment and

- 17 -

1  reinvestment of income therefrom to operate, expand and perpetuate the Wells Fargo

2  Enterprise.

3      83.     Specifically, Plaintiffs and Class members have been injured in their

4  business or property in a variety of ways, including paying unreasonable inspection

5  and late fees.

6                              **COUNT IV**

7       **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS**
         **CODE §17200, _ET SEQ._**

8

9      84.     Plaintiffs incorporate and reallege the paragraphs above as if fully set

10 out herein.

11     85.     As set forth above, Defendants' scheme included making false and

12 misleading representations to borrowers, occurring in significant part in California,

13 which constitutes unlawful, unfair and fraudulent business practices under the UCL.

14 In particular, because Defendants' scheme of charging borrowers unlawful and

15 unreasonable fees w as devised, implemented and directed from Wells Fargo's

16 headquarters in California, the UCL applies to a class of borrowers, both within and

17 outside of California, who have been harmed as a result.  Moreover, California has a

18 substantial interest in preventing fraudulent practices within the State which may have

19 an effect both in California and throughout the rest of the country.

20     86.     Specifically, Plaintiffs and Class members have been injured in their

21 business or property by paying unreasonable inspection and late fees.

22     87.     Plaintiffs' claims involve questions of common and general interest.

23     88.     Plaintiffs have suffered losses of money as a result of Defendants'

24 unlawful, deceptive and unfair business practices. As a result of Defendants'

25 violations of the UCL, Plaintiffs and members of the Class named in this Count are

26 entitled to bring this claim for disgorgement and to recover restitution, reasonable

27 attorneys' fees, and costs and other injunctive or declaratory relief as may be

28 available.

- 18 -

## COUNT V

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §17500, *ET SEQ.*

89.     Plaintiffs incorporate and reallege the paragraphs above as if fully set out herein.

90.     Defendants violated California's FAL because their scheme involved deceptive, untrue and misleading advertising.  In particular, because Defendants' scheme of charging borrowers unlawful and unreasonable fees was devised, implemented and directed from Wells Fargo's headquarters in California, the FAL applies to a class of borrowers, both within and outside of California, who have been harmed as a result.  Moreover, California has a substantial interest in preventing fraudulent practices within the State which may have an effect both in California and throughout the rest of the country.

91.     Specifically, Plaintiffs and Class members have been injured in their business or property by paying unreasonable inspection and late fees.

92.     Defendants should be ordered to disgorge and make restitution to Plaintiffs and Class members from the excessive payments and profits obtained at their expense.

## COUNT VI

## VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE §1750, *ET SEQ.*

93.     Plaintiffs incorporate and reallege the paragraphs above as if fully set out herein.

94.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "CLRA").

95.     Wells Fargo's actions, omissions, representations and conduct has violated, and continues to violate the CLRA, because they extend to transactions that

1 | are intended to result, or which have resulted, in the sale or lease of goods or services
2 | to consumers.

3 |      96.    Plaintiffs are "consumers" as that term is defined by the CLRA in
4 | California Civil Code §1761(d).

5 |      97.    The mortgage servicing, including, but not limited to, the property
6 | inspections were "goods" and/or "services" within the meaning of California Civil
7 | Code §1761(a).

8 |      98.    By engaging in the actions, representations and conduct set forth in this
9 | complaint, Wells Fargo has violated, and continues to violate, §1770(a)(7) of the
10 | CLRA. Specifically, in violation of California Civil Code §1770(a)(7), Wells Fargo's
11 | acts and practices constitute unfair methods of competition and unfair or deceptive
12 | acts or practices in that they misrepresent the particular standard, quality or grade of
13 | the goods.

14 |      99.    By engaging in the actions, representations and conduct set forth in this
15 | Class Action Complaint, Wells Fargo has violated, and continues to violate,
16 | §1770(a)(14) of the CLRA. Specifically, in violation of California Civil Code
17 | §1770(a)(14), Wells Fargo's acts and practices constitute unfair methods of
18 | competition and unfair or deceptive acts or practices in that they represent that a
19 | transaction confers or involves rights, remedies, or obligations which it does not have
20 | or involve, or which are prohibited by law.

21 |      100.    By engaging in the actions, representations and conduct set forth in this
22 | Class Action Complaint, Wells Fargo has violated, and continues to violate,
23 | §1770(a)(16) of the CLRA. Specifically, in violation of California Civil Code
24 | §1770(a)(16), Wells Fargo's acts and practices constitute unfair methods of
25 | competition and unfair or deceptive acts or practices in that they represent that the
26 | subject of a transaction has been supplied in accordance with a previous representation
27 | when it has not.

28 |

1        101.     Plaintiffs request that this Court enjoin Wells Fargo from continuing to

2  employ the unlawful methods, acts and practices alleged herein pursuant to California

3  Civil Code §1780(a)(2). If Wells Fargo is not restrained from engaging in these types

4  of practices in the future, Plaintiffs and other Class Members will continue to suffer

5  harm.

6        102.     At this time, Plaintiffs specifically do not seek any damages under the

7  CLRA. However, should Wells Fargo refuse to stop its improper practice complained

8  of here, Plaintiffs will amend this Class Action Complaint to seek damages in

9  accordance with the CLRA after providing notice pursuant to California Civil Code §

10  1782.

11                                     **COUNT VII**

12              **FRAUD, DECEIT AND/OR MISREPRESENTATION**

13        103.     Plaintiffs incorporate and reallege the paragraphs above as if fully set

14  out herein.

15        104.      During the Class Period Defendants made, and continues to engage

16  in fraudulent, misrepresentative, false and/or deceptive practices in order to charge

17  extraneous fees and collaterally profit.

18        105.      These aforementioned fraud, misrepresentations, deceptive, and/or

19  false acts and omissions concerned material facts that were essential to the analysis

20  undertaken by Plaintiffs and those similarly situated when it came time to pay for their

21  mortgages in arrears.

22        106.     Plaintiffs and those similarly situated would have acted differently had

23  they not been misled, but instead been informed that the fees being charged were

24  unlawful and unreasonable and contrary to the terms of their mortgage loans.

25  Specifically, Plaintiffs would not have paid the unlawful and unreasonable charges in

26  question.

27

28

1    107.   By and through such fraud, deceit, misrepresentations and/or

2  omissions, Defendants intended to induce Plaintiffs and those similarly situated to

3  alter their position to their detriment.

4    108.   Plaintiffs and those similarly situated justifiably and reasonably relied

5  on Defendants' omissions and misrepresentations, and, as such, were damaged by the

6  Defendants.

7    109.   As a direct and proximate result of Defendants' omissions and

8  misrepresentations, Plaintiffs and those similarly situated have suffered damages

9  including paying unlawful and unreasonable fees contrary to the terms of their

10  mortgage loans.

11                            **COUNT VIII**

12                          **UNJUST ENRICHMENT**

13    110.   Plaintiffs incorporate and reallege the paragraphs above as if fully set

14  out herein.

15    111.   Defendants' deceptive scheme unjustly enriched Defendants, to the

16  detriment of the Class, by causing Defendants to receive excessive monetary

17  payments from Plaintiffs and the Class.

18    112.   Specifically, Plaintiffs and Class members have been injured in their

19  business or property by paying unlawful and unreasonable fees contrary to the terms

20  of their mortgage loans.

21    113.   Defendants' retention of funds paid by Plaintiffs and Class members

22  violates the fundamental principles of justice, equity, and good conscience.

23  Accordingly, Defendants should be ordered to return any funds obtained as a result of

24  their deceptive scheme to the Class.

25  //

26  //

27  //

28  //

CLASS ACTION COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

(a)     Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as the representatives of the Class, and designating their counsel as counsel for the Class;

(b)     A declaration that Defendants have committed the violations alleged herein;

(c)     An award of treble the amount of damages suffered by Plaintiffs and members of the Class as proven at trial plus interest and attorneys' fees and expenses pursuant to 18 U.S.C. § 1962(c) and (d);

(d)     Ordering Defendants to disgorge the payments and profits they wrongfully obtained at the expense of Plaintiffs and Class members;

(e)     Ordering that restitution be made to Plaintiffs and Class members for Defendants' unjust enrichment;

(f)     Ordering that an accounting be made by Defendants of their wrongfully obtained payments and profits;

(g)     An injunction preventing Defendants from engaging in future fraudulent practices;

(h)     For declaratory and injunctive relief pursuant to California Civil Code §1780;   (Plaintiffs at this point expressly do not seek any monetary type of relief pursuant to California Civil Code §1780);

(i)     Costs of this action, including reasonable attorneys fees and expenses; and

(j)     Any such other and further relief as this Court deems just and proper.

//
//
//
//

- 23 -

CLASS ACTION COMPLAINT

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs demand a trial by jury on all claims so triable as a matter of right.

3

DATED:      August 5, 2008

4

Respectfully submitted,

5

6

REESE RICHMAN LLP
Michael R. Reese

7

230 Park Avenue, 10th Floor
New York, New York 10169

8

Telephone: (212) 579-4625
Facsimile: (212) 572-4272

9

10

WHATLEY DRAKE
& KALLAS, LLC

11

Deborah Clark-Weintraub
1540 Broadway, 37th Floor

12

New York, New York 10036
Telephone: (212) 447-7070

13

Facsimile: (212) 447-7077

14

15

WHATELY DRAKE
& KALLAS, LLC

16

Sara Hacker
2001 Park Place North, Suite 1000

17

Birmingham, Alabama 35203
Telephone: (205) 488-1204

18

Facsimile: (205) 328-9669

19

20

STROM LAW FIRM, LLC
J. Preston Strom, Jr.

21

Mario Pacella
2110 N. Beltline Blvd., Suite A

22

Columbia, South Carolina 29204
Telephone: (803) 252-4800

23

Facsimile: (803) 252-4801

24

*Attorneys for Plaintiffs*

25

26

27

28

- 24 -

CLASS ACTION COMPLAINT