IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY YOUNG, *et al.*, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>WELLS FARGO & CO., *et al.*,<br><br>　　　　Defendants. | No. C 08-3735 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE TO SOUTHERN DISTRICT OF IOWA; DENYING ALL OTHER PENDING MOTIONS AS MOOT** |

Several motions are scheduled for a hearing on December 19, 2008. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matters are appropriate for resolution without oral argument, and VACATES the hearing. The Court also VACATES the case management conference scheduled for the same day. For the reasons set forth below, the Court GRANTS defendants' motion and TRANSFERS this action to the United States District Court for the Southern District of Iowa.

**BACKGROUND**

Plaintiffs filed this lawsuit on behalf of a nationwide class of mortgage borrowers, and they challenge property inspection fees and late fees assessed by Wells Fargo. The named plaintiffs are Gregory and Odetta Young, who purchased a home in New Jersey by obtaining a Wells Fargo mortgage, and Edward and Connie Huyer, who purchased a home in South Carolina by obtaining a Wells Fargo mortgage. Complaint ¶¶ 12-13. The complaint alleges claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and various California statutes, including the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, False Advertising Law, Cal. Bus. & Prof. Code §§ 17500

*et seq.*, and the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

Plaintiffs have sued Wells Fargo & Co. ("WFC") and Wells Fargo Home Mortgage, Inc. WFC is a "diversified financial services company headquartered in San Francisco, California." Complaint ¶ 14. The complaint alleges that Wells Fargo Home Mortgage Inc. is a subsidiary of WFC, and that Wells Fargo Home Mortgage Inc. serviced plaintiffs' mortgage loans. *Id*. ¶¶ 14-15.

Defendants have submitted the declaration of Keith Schares, who is the Vice President - Loss Control/Claims/Property Preservation of Wells Fargo Bank, N.A. ("WFB"). Mr. Schares states that WFB is a national banking association, chartered and with a principal place of business in South Dakota, and that WFB is a subsidiary of WFC. Schares Decl. ¶¶ 3-4. Mr. Schares states that Wells Fargo Home Mortgage ("WFHM") is WFB's residential mortgage loan origination and servicing division. *Id*. ¶ 5. "Prior to May 8, 2004, 'Wells Fargo Home Mortgage, Inc.' did exist; it was a corporation, and a subsidiary of WFB. On that date, however, it was merged into WFB. Thus, WFHM no longer exists as a separate corporation or legal entity. Rather it is the mortgage division of WFB, a national bank." *Id*.[1]

Mr. Schares states that WFHM does not have headquarters in California, as alleged in the complaint, but rather that WFB's mortgage division is headquartered in Des Moines, Iowa, where over four thousand employees work. *Id*. ¶ 6.

> The chief officers and many of the employees responsible for WFHM's mortgage business are located in these offices in Des Moines. These include the co-Presidents of WFHM, the Vice President - Head of Mortgage Servicing, and the Vice President - Loss Control/Claims/Property Preservation. The Bank has officers and employees in other states, including California. However, the officers and directors who work in the mortgage division, WFHM, and who are responsible for developing, implementing and managing the policies, practices and procedures at issue in this action, i.e., the

---

[1] Plaintiffs assert that "defendants' claim that Wells Fargo Home Mortgage Inc. ceased to exist as a legal entity as of 2004 (and therefore cannot be sued by homeowners who accuse it of fraud) [] appears to be untrue" based upon a recent bankruptcy case involving Wells Fargo Home Mortgage Inc. Plaintiffs' Opposition at 2 (citing *In re Dorothy Chase Stewart*, 391 B.R. 327 (Bankr. E.D. La. 2008)). However, as defendants note, in that bankruptcy action Wells Fargo has appeared as "Wells Fargo Bank, NA Successor by Merger to Wells Fargo Home Mortgage, Inc. *See* Defs' Request for Judicial Notice Ex. A (Response to Objection to Proof of Claim filed in *In re Dorothy Chase Stewart*). In any event, the Court finds it irrelevant to the transfer analysis whether Wells Fargo Home Mortgage Inc. is a separate legal entity, and thus plaintiffs do not need to conduct discovery on that issue for purposes of resolving the instant motion. Regardless of WFHM's legal status, the factual record is undisputed that WFHM is headquartered in Des Moines, and that the witnesses and evidence associated with WFHM are largely if not entirely located in Des Moines.

> assessment of fees to borrowers in default, are all located in the West Des Moines area. None of these persons is located in California. The WFHM officers and employees in Des Moines would be able to testify about its loan servicing operations and its policies and procedures concerning the assessment of fees to borrowers in default, including the purpose and application of property inspection and late fees, which are at issue in this action. Such potential witnesses would include me, Sherilee Massier, Loan Administration Manager and Melissa Keller, Loan Administration Manager. All three of us live and work in the Des Moines area of Iowa. WFHM's procedures for charging fees to its real estate borrowers were not devised, implemented or directed from California, as alleged in paragraphs 85 and 90 of the Complaint.

*Id*. ¶ 7.

With regard to WFC, Mr. Schares states that WFC is a bank holding company headquartered in San Francisco. "It is primarily composed of a board of directors who delegate the daily routine of conducting WFB's business to WFB's officers and employees. The directors fulfill their fiduciary and legal obligations to WFC, but they are not involved in the administration of WFB's mortgage business, and they were not involved in the creation, execution or supervision of the particular policies and practices at issue in this action, i.e., the assessment of fees against borrowers in default. WFC has few officers and employees of its own, but the only ones who are involved in these practices and policies live and work in the West Des Moines area of Iowa." *Id*. ¶ 4.

Defendants have submitted copies of plaintiffs' mortgages/deeds of trust. The documents identify WFB as the lender, and state that WFB's address is "P.O. Box 5137, Des Moines, IA 50306-5137." *Id*. Ex. A at 2, B at 2. The Youngs made mortgage payments by sending those payments to a lock box established by a vendor for WFHM in Newark, New Jersey. *Id*. ¶ 12. The Huyers made their mortgage payments by sending those payments to a lock box established by a vendor for WFHM in Dallas, Texas. *Id*. ¶ 13. Neither the Youngs nor the Huyers ever mailed their mortgage payments to California. *Id*. ¶¶ 12-13.

Mr. Schares also states that WFHM maintains loan servicing records which are stored on WFHM's mainframe computer system known as the Fidelity System. *Id*. ¶ 9. The complaint refers to this system as the "Fidelity Mortgage Servicing Package" or "Fidelity MSP." Complaint ¶¶ 2, 23. Plaintiffs allege that the Fidelity MSP "is programmed to assess as many fees as possible." *Id*. ¶ 22. According to defendants, computer systems for the Fidelity System are maintained in Jacksonville, Florida and Little Rock, Arkansas. Schares Decl. ¶ 9. Mr. Schares states that WFHM employees

3

responsible for operating the Fidelity System are located throughout the United States, and that the employees in Des Moines "are the persons knowledgeable about how that system is programmed." *Id*.

WFHM contracts with three vendors to conduct inspections of properties which secure its mortgage loans: First American Field Services, Inc., LPS Field Services, Inc., and Mortgage Contracting Services, LLC. *Id*. ¶ 10. Mr. Schares states that contacts for First American are located in Texas; contacts for LPS are located in Ohio; and contacts for Mortgage Contracting Services are located in Florida. *Id*.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

To support a motion for transfer, the moving party must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice. *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). Transfer is discretionary, but is governed by certain factors specified in § 1404(a) and in relevant case law.

## DISCUSSION

As an initial matter, the Court finds that venue would be proper in either this district or the Southern District of Iowa. A RICO action may be brought in any district in which a defendant resides, is found, has an agent or transacts its affairs, or where the general venue statute is satisfied. *See* 18 U.S.C. § 1965(a). There is no dispute that defendants reside or may be found in both districts.

4

Once venue is determined to be proper in both districts, courts evaluate the following factors to determine which venue is more convenient to the parties and the witnesses: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

The Court finds that on balance, these factors favor transfer. Where a plaintiff does not reside in the forum, the Court may afford his choice considerably less weight. *See* Schwarzer et al., Federal Civil Procedure Before Trial § 4:760 (2006). Here, the Youngs reside in New Jersey and the Huyers reside in South Carolina, and none of the named plaintiffs appear to have any connection to this district. In addition, "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). The evidence before the Court shows that WFB's policies, procedures and practices regarding the assessment of property inspection and late fees were developed, implemented and managed at the mortgage division headquarters in Des Moines. The address listed in plaintiffs' mortgage agreements for the "lender" is WFB's address in Des Moines. Plaintiffs assert that WFC dictated the policies and practices at issue from its headquarters in California, and they argue that if the Court is inclined to grant the transfer motion they should be permitted to conduct discovery on WFC's involvement in the disputed policies and practices. However, even if WFC is involved to some degree in the formulation of these policies and practices, the connection between plaintiffs' claims and this district is much more tenuous than the connection to Iowa.

The Court further finds that on balance, Iowa is more convenient for the parties and witnesses, and provides greater ease of access to evidence. Plaintiffs assert that California is more convenient because there are more direct flights on two airlines (United Airlines and American Airlines) from JFK to SFO than from JFK to Des Moines. Plaintiffs' evidence in support of this assertion consists of a print out from an internet travel site showing a list of flights from JFK to SFO; there is no information about flights to Des Moines, nor is there any information about flights from plaintiffs' states of New Jersey or South Carolina. The Court cannot conclude that this district is more convenient than Iowa for

5

plaintiffs. However, the Court does find that Iowa is more convenient for defendant and the identified WFB and third party witnesses. Mr. Schares states that the senior level officers and employees responsible for developing and implementing the polices and procedures at issue are located in Des Moines. Much of the evidence is located in Des Moines where the mortgage division is headquartered, or Florida and Arkansas where the Fidelity MSP computer servers are maintained.

Plaintiffs assert that it is likely that many class members reside in California because of the "struggling real estate market" in California, and that transfer should be denied because this district will be more convenient for these class members. The Court finds that even if this assertion is true,[2] that fact does not weigh against transfer because the relevant inquiry is the convenience of the named parties and principal witnesses likely to be deposed or testify at trial. As noted above, the named plaintiffs do not reside in California, defendants' identified witnesses reside in Des Moines, and the third party vendor witnesses are largely not located in California.[3] In light of the fact that this case is brought as a nationwide class action, class members will be located throughout the country, including, no doubt, numerous borrowers on the East[4] and West coasts and in the major metropolitan areas scattered across the country.

The remaining factors are either neutral or favor transfer. With respect to familiarity with plaintiff's RICO claims, "either forum is equally capable of hearing and deciding those questions." *DealTime.com Ltd. v. McNulty*, 123 F. Supp. 2d. 750, 757 (S.D.N.Y. 2000). Although plaintiffs have alleged a number of California claims, it is unclear whether California law applies. The mortgages

---

[2] As with plaintiffs' assertion that they need to conduct discovery regarding the legal status of WFHM, the Court finds that discovery on class members is not necessary to decide the transfer motion. The Court also notes that defendants offered to make Mr. Schares available for deposition on the matters contained within his declaration, and that plaintiffs refused.

[3] The Court notes that First American Real Estate Information Services is headquartered in California. Even if there are some First American witnesses located in California, according to defendants the First American witnesses with knowledge of the issues in this case are located in Texas. Schares Decl. ¶ 10.

[4] Convenience of counsel is not among the factors to be separately considered when evaluating a venue motion. Here, however, all plaintiffs' counsel are from the eastern half of the country (New York City, Birmingham, Alabama and Columbia, South Carolina). Had the action been filed in New Jersey, where the Young plaintiffs reside, or South Carolina, where the Huyer plaintiffs reside, at least their convenience and counsel's convenience would be affirmatively improved. As a matter of geography, litigation in California will convenience neither the Youngs, the Huyers nor counsel.

6

plaintiffs signed state that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." Schares Decl. Ex. A at 13; B at 13. In addition, the Court notes that generally nonresidents may not sue under California statutes unless the wrongful conduct occurred in California. *See generally Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222-27 (1999).

The Court finds that the Southern District of Iowa has a stronger interest in the controversy than does this district. Notably, none of the named plaintiffs reside in either district. Although WFC is located in this district and may be a proper defendant,[5] the record before the Court shows that the Bank's mortgage division is headquartered in Des Moines, and defendants state that the policies and practices at issue were all designed and implemented in Des Moines.

Finally, plaintiffs cite the fact that the time from filing to *disposition* is quicker in this district than in the Southern District of Iowa, while defendants emphasize that the time from filing to *trial* is shorter in Iowa; at the outset of the litigation, the Court is unable to predict which statistic is more relevant. Defendants also note that this district is relatively more congested by virtue of sheer volume of filings and pending cases. The Court finds that this factor is neutral in the transfer analysis.

///

---

[5] Defendants state that they intend to move to dismiss WFC and substitute WFB. The Court does not express any view regarding whether WFC is a proper defendant.

**CONCLUSION**

For the foregoing reasons and good cause shown, the Court hereby GRANTS defendants' motion to transfer venue, and TRANSFERS this action to the United States District Court for the Southern District of Iowa. The Court DENIES AS MOOT defendants' motion for a protective order and motion to dismiss the complaint. (Docket Nos. 12, 15, & 22).

**IT IS SO ORDERED.**

Dated: December 17, 2008

SUSAN ILLSTON
United States District Judge