**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| GREGORY YOUNG *et al.* on behalf of themselves and all others similarly situated | Case No. 4:08-cv-507 |
| Plaintiffs, | **REPLY TO WELLS FARGO'S OPPOSITION** |
| vs. | **BRIEF REGARDING E-DISCOVERY** |
| | **PROTOCOLS** |
| WELLS FARGO & CO, and WELLS FARGO BANK, N.A. | |
| Defendants. | |

Plaintiffs respectfully submit this Brief in reply to Wells Fargo's Opposition Brief Regarding E-Discovery Protocols ("Opposition"), Doc. #77, and in further support of the arguments set forth in Plaintiffs' Brief Regarding Protocol for Electronic Discovery ("Plaintiffs' Opening Brief"), Doc. #71.

**A.  The Alleged Proprietary Nature of the Fidelity Software Is No Bar to Production.**

Defendants assert, "[t]hough it has access to Fidelity, Wells Fargo does not own the system." Opp'n at 4.  For this reason alone, Defendants contend that they cannot produce any electronically-stored information ("ESI") in native format or related metadata during discovery on the ground of inaccessibility.  *See* Opp'n at 1-4.  Defendants' contention is meritless.

In *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293 (S.D.N.Y. 2003), the court rejected a similar argument made by third-party auditor PriceWaterhouseCoopers ("PWC"), which objected to producing electronic copies of its workpapers in response to the plainiffs' subpoena on the ground that they were "only accessible with the aid of its proprietary software …." *Id.* at 296-97.  The court, noting that Rule 34 obligated PWC to produce electronic documents, directed PWC "to produce electronically its workpapers by either: (1) producing a copy of its workpapers on CD-ROMs that could be viewed using commercially-available software; or (2) producing a copy of its workpapers on CD-ROMs that

could be viewed using PWC's proprietary software, ***as well as producing the proprietary software to the extent it is necessary to view the workpapers***." *Id.* at 297 (emphasis added).

In this case, Defendants fail to demonstrate that a similar result could and should not be obtained here. Conspicuously, Defendants do not proffer any evidence whatsoever to support their broad assertion that "[n]ative ESI and associated metadata from Fidelity is . . . inaccessible for production purposes, and unusable . . . ." *See* Opp'n. at 5.  Indeed, Defendants do not submit a single affidavit from any information technology personnel or experts showing:  1) that production of ESI and related metadata contained on Fidelity cannot be provided in a manner by which it could be viewed by Plaintiffs on commercially-available software or in a manner by which it could be viewed by Plaintiffs on the allegedly proprietary Fidelity software program; and/or 2) that the allegedly proprietary Fidelity software program cannot be produced to the extent it is necessary to view relevant ESI and metadata requested by Plaintiffs.  The conclusory assertions of Defendants' attorneys regarding the inaccessibility of Defendants' ESI and related metadata carry no weight and should be disregarded.  Moreover, the alleged proprietary nature of the Fidelity software program is not at all a bar to discovery of relevant ESI and related metadata.  The parties can easily stipulate to a confidentiality order to be so-ordered by this Court to allay any confidentiality concerns.  *See Honeywell*, 230 F.R.D. at 297 n.1.[1]

## B.  <u>Native ESI and Related Metadata Are Highly Relevant and Must Be Produced.</u>

Defendants' contention that "[n]ative ESI and associated metadata from Fidelity is … also largely irrelevant to Plaintiffs' claims" is wrong. *See* Opp'n at 5.  The gravamen of Plaintiffs' claims is that Defendants used a computer system and software program to automatically assess unlawful fees for late payments and property inspections.  First Amended Complaint ("Complaint"), Doc. #42, ¶ 3. As

---

[1] The *Honeywell* court overruled PWC's objections to producing its electronic workpapers on confidentiality grounds, stating:  "PWC's concerns regarding the proprietary nature of its software are unavailing . . . [T]here is a Stipulated Confidentiality Order in effect . . . which would encompass PWC's production of its proprietary software . . . That protective order obviates PWC's proprietary software concerns . . . In addition, plaintiffs are not in the auditing business and do not otherwise compete against PWC.  Thus, the concern that PWC's proprietary software will be acquired by one of its rivals and used to its competitive disadvantage is de minimis." *Id.*

alleged in the Complaint, Defendant managed their mortgage servicing tasks through computer software that required little or no human intervention. *Id.* at ¶¶ 26-35. Plaintiffs further allege that Defendants used a specific computer software to service their mortgages which automatically generated electronic information related to each borrower's account. *Id.* at ¶¶ 27, 28, 29-33. Accordingly, ESI relating to the nature of this computer system and software program and how they operate is highly probative.

Production of ESI in TIFF format with certain load files, as urged by Defendants (*see* Opp'n at 3-7) would be grossly inadequate. First, "production in static image form such as TIFF or PDF … entails the loss of metadata and involves significant processing time." *Aguilar*, 255 F.R.D. at 356 (citing Sedona Principles 2d cmt 12b). Second, "it also does not work well for spreadsheets and databases." *Id.* In contrast, "production in native form gives the receiving party access to the same information and functionality available to the producing party and requires minimal processing time before production." *Id.*

The decision in *Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L.*, Case No. 04 C 3 109, 2006 U.S. Dist. LEXIS 10838, at *1 (N.D. Ill. Mar. 8, 2006), informs the point. There, the court ordered the defendant to produce documents in their original electronic media that it had already produced to the plaintiff in TIFF format, reasoning:

> … it is clear that the TIFF documents do not contain all of the relevant, nonprivileged information contained in the designated electronic media. The parties agree that, unlike the original electronic media, the TIFF documents do not contain information such as the creation and modification dates of a document, e-mail attachments and recipients, and metadata. 3B6 USA argues that the missing information is not relevant to Plaintiff's case. The Court disagrees. A request for *discovery* should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action…Plaintiff claims that the information contained in the designated electronic media is relevant to his infringement claims and will allow him to piece together the chronology of events and figure out, among other things, who received the information and when. Because the information sought by Plaintiff may be relevant at the discovery stage, and because 3B6 USA does not suggest that the electronic media contain privileged or classified information, Plaintiff is entitled to that information.

*Id.* at *8-10 (citations omitted; emphasis in original). The *Hagenbuch* court's reasoning applies with equal force here.

In the instant action, failure to obtain relevant native ESI and its related metadata would substantially prejudice Plaintiffs' ability to prepare their case.[2] By way of example, Plaintiffs allege that property inspection reports that were automatically generated pursuant to Defendants' mortgage servicing computer system and software program were never read or reviewed by Defendants' personnel. Compl., Doc. #42, ¶ 40. The native format of any electronic property inspection reports, along with accompanying metadata, may allow Plaintiffs to piece together a timeline of who, if anyone, read or reviewed the report. In contrast, production of these inspection reports in TIFF format would not provide the same relevant information.

For these reasons, Defendants' transparent, self-serving attempt to dictate the terms and restrict the parameters of Plaintiffs' electronic discovery in this action should be rejected. However, in the event that the Court finds that Defendants may produce requested relevant ESI in TIFF format, then Plaintiffs respectfully request, in the alternative, that the Court require Defendants to produce an accompanying load file containing searchable text and selected metadata. *See* Sedona Principles 2d cmt 12b, Illustration i.

**C. Under the Applicable Standards, Defendants Must Bear the Costs**
   **of Their Electronic Production.**

Defendants' failure to rebut "the presumption that a responding party must bear the expense of complying with discovery requests," *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S.Ct. 2380 (1978), is glaring. To be sure, Defendants have not proffered any affidavits or other proof to substantiate their claims that their ESI contained on Fidelity and their ESI contained on backup tapes are

---

[2] "As a general rule of thumb, the more interactive the application, the more important the metadata is to understanding the application's output." *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 647 (D.Kan. 2005). "Thus, while metadata may add little to one's comprehension of a word processing document, it is often critical to understanding a database's application." *Aguilar*, 255 F.R.D. at 354 (citing *Williams*, 230 F.R.D. at 647).

inaccessible or to show that production of this purportedly inaccessible data would be unduly burdensome or expensive.  Consequently, "cost-shifting does not even become a possibility." *Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007); *see also Open TV v. Liberate Tech.*, 219 F.R.D. 474, 476 (N.D.Cal. 2003) (whether production of electronic documents is unduly burdensome or expensive turns on the accessibility of the information; "[s]hifting the cost of production from the producing party to the requesting party should be considered only when inaccessible data is sought.")

Moreover, Defendants' request that they be allowed to produce ESI in TIFF format seriously undercuts their argument for cost-shifting.  A "marked disadvantage" of the TIFF format "is that the production involves significant costs …." *Aguilar*, 255 F.R.D. at 356.  Thus, it is inherently contradictory for Defendants to urge this Court to implement the more costly TIFF production format, on the one hand, and to argue that Plaintiffs be forced to bear the costs of Defendants' electronic production on the other hand.

Accordingly, this Court should require Defendants to bear the costs of production of all relevant ESI requested by Plaintiffs, regardless of format.

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that Defendants' Opposition be denied in its entirety.

Dated:  July 27, 2009                                      Respectfully submitted,

**ROXANNE CONLIN & ASSOCIATES**          */s/ Kim E. Richman*
Roxane Conlin                                              Kim E. Richman (*Lead Counsel*)
319 Seventh Street, Suite 600                    **REESE RICHMAN LLP**
Des Moines, Iowa 50309                           875 Sixth Avenue, 18th Floor
Telephone:  (515) 283-1111                      New York, New York 10001
Facsimile:  (515) 282-0477                        Telephone:  (212) 579-462
Email:  roxlaw@aol.com                            Facsimile:  (212) 253-4272
                                                                  Email:  kim@reeserichman.com

**WHATLEY DRAKE & KALLAS LLC**
Deborah Clark-Weintraub
1540 Broadway 37th Floor
New York, New York 10036

**STROM LAW FIRM, LLC**
Mario Pacella
210 N. Beltine Blvd, Suite A
Columbia, South Carolina 29204

**WHATLEY DRAKE & KALLAS LLC**
Sara Hacker
2001 Park Place North
Birmingham, Alabama 3520

**LAW OFFICES OF JONATHAN G. STEIN**
Jonathan G. Stein
5050 Laguana Blvd., Suite 112-325
Sacramento, California 95758

*Counsel for Plaintiffs*