**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| GREGORY YOUNG, ODETTA YOUNG, EDWARD HUYER and CONNIE HUYER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WELLS FARGO & CO. and WELLS FARGO BANK, N.A. <br><br> Defendants. | **Case No. 4:08-CV-507-RP-CFB** <br><br> **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO EXTEND SCHEDULING ORDER DEADLINES AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS** <br><br> **(Oral Argument Requested)** |

Plaintiffs respectfully submit this Brief in support of their Motion, pursuant to Rules 7 and 16 of the Local Rules of the United States District Courts for the Northern and Southern Districts of Iowa ("L.R."), for an Order extending all deadlines for the period October 1, 2010 through September 12, 2011, established by the Order Adopting Scheduling Order and Discovery Plan, Setting Trial and Final Pretrial entered on February 5, 2010 (the "Scheduling Order") by seven (7) months and in support of their Motion, pursuant to Rules 26, 33, 34 and 37 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and L.R. 7 and 37 for an Order compelling Defendants to produce all relevant documents responsive to Plaintiffs' discovery requests that they have refused to produce. As demonstrated fully below, the instant Motions should be granted in their entirety.

## TABLE OF CONTENTS

I.      INTRODUCTION………………………………………………………….……..2

II.     EXTENSION OF THE SCHEDULING ORDER DEADLINES IS
        WARRANTED…...........................................................................................7

1

**III.     THE DOCUMENTS WITHHELD SHOULD BE PRODUCED………….……….7**

**IV.     CONCLUSION………………………………………………………….………11**

## I. <u>INTRODUCTION</u>

On or about January 15, 2010, Defendants served their Responses to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents (collectively, "Discovery Requests") and, thereafter, commenced their production of certain documents. On June 4, 2010, counsel for the parties held the first of several meet-and-confer telephonic conferences to discuss the status of Defendants' document production and outstanding issues pertaining to Defendants' objections to Plaintiffs' Discovery Requests, which Defendants' counsel had summarized in a January 21, 2010 letter to Plaintiffs' counsel.[1] *See* the accompanying Declaration of Michael R. Reese, dated October 1, 2010 ("Reese Declaration"), ¶ 11 and Ex. 2 at 1-2, filed herewith, together with its Exhibits, and incorporated herein by reference. During that call, and in a subsequent June 24, 2010 telephonic conference, Defendants stated their position that their document production in response to Plaintiffs' Discovery Requests was complete. *Id.* at Exs. 2 at 1-2 and 7 at 1. Plaintiffs rejected this contention given that, at that point, Defendants had not produced, *inter alia*, any of the following documents that are responsive to the Discovery Requests: 1) e-mail and other electronically-stored information ("ESI"); 2) any communications, reports and/or analyses by Wells Fargo

---

[1] As of June 4, 2010, Defendants had produced only the following documents: 1) vendor contracts; 2) property inspection reports relating to Plaintiffs and generic samples; 3) government guidelines to be followed with respect to property inspections; 4) Wells Fargo's policies and procedures regarding late fees; 5) Plaintiffs' loan documents; 6) the pooling and servicing agreements for Plaintiffs' loans; 7) billing statements relating to Plaintiffs; 8) Wells Fargo's insurance policy; 9) uniform instructions and mortgage forms; and 10) the organizational chart for the property inspection unit. Reese Decl., Ex. 2 at 1 n.1.

employees relating to the property inspection fees and late fees at issue; and 3) documents other than Defendants' vendor agreement with Fidelity relating to the Fidelity LPS system. Reese Decl., Ex. 2 at 1-2.

Since that time, the parties have engaged, and continue to engage, in a meet-and-confer process through telephonic conferences and correspondence and have conferred, and continue to confer, in good faith in an attempt to resolve or narrow the disputed issues of discovery. *Id.* at ¶ 11 and Exs. 2-5, 7 and 8. The parties have succeeded in this effort with respect to advancing Defendants' production of information concerning the Fidelity LPS platform, e-mail and other ESI, as well as, other documents sought by the Discovery Requests. *Id.*

The gravamen of Plaintiffs' Second Amended Class Action Complaint ("SAC" or "Complaint"), filed on December 14, 2009, is that "Defendants engaged in a fraudulent scheme … to exact improper inspection fees and late charges from homeowners who had fallen into arrears on their mortgages." ¶¶ 1, 19-40.[2] The SAC alleges that, to effectuate their scheme, "Defendants utilized a computer system to automatically assess fees for late payments and property inspections without regard to the terms of the borrowers' mortgage loans or the relevant circumstances." ¶¶ 3, 19-40. As the SAC also alleges, "[i]nstead of being based upon reasonable parameters, the computer system was programmed to assess as many charges as possible and to pay first all outstanding fees and costs before satisfying interest and principal." *Id.* The SAC further alleges that, "Defendants concealed the nature of the fees being assessed on monthly statements mailed to [borrowers] by describing them simply as 'other' charges." *Id.* Based on these allegations, *inter alia*, the SAC asserts claims against Defendants for violations

---

[2] References herein to "¶" are to the paragraphs of the SAC.

of RICO, 18 U.S.C. § 1962(c), and of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* ¶¶ 99-108.

In response to Plaintiffs' Discovery Requests, Defendants have furnished discovery identifying the Fidelity LPS system as the computer software platform that Defendants use to service and manage borrowers' mortgage loan accounts, including the assessment of property inspection fees and late charges. Reese Decl., Ex. 1. Consequently, information relating to Fidelity LPS concerning how the system operates and what the programming logic and imported algorithms are with respect to the assessment of the property inspection fees and late charges at issue is central to proving Plaintiffs' claims.

However, the bulk of discovery sought by Plaintiffs concerning the Fidelity LPS platform remains outstanding. To date, Defendants have produced only their vendor agreement with Fidelity and an end-user manual for Fidelity MSP provided by Fidelity to Wells Fargo, which Defendants have deemed non-proprietary. Reese Decl., Exs. 2 at 3, 3 at 1-2 and 4 at 1. In fact, Defendants' efforts to provide a complete response to Document Requests 5, 40 and 46, by producing all responsive information sought by these Requests, have advanced at a glacial pace.[3] Indeed, it was only recently, in a letter from Defendants' counsel, dated September 3, 2010, that: 1) Defendants furnished the information they claim is necessary to facilitate their further production of documents concerning Fidelity that are responsive to Plaintiffs' Discovery Requests, all of which Defendants assert are proprietary; and 2) Defendants advised that they

---

[3] Request Nos. 5, 40 and 46 request all documents relating to Defendants' "use of computer software platforms to order property inspections and to assess consumers fees for property inspections," and "the Fidelity Mortgage Servicing Package computer software platform that relate to either Inspection Fees, Other Charges or Late Charges," and identifying "all computer systems or databases that [Defendants] maintain(ed) containing information relating to the calculation of Inspection Fees, Other Charges or Late Charges," respectively.

4

have, at last, identified a witness to testify in response to the Rule 30(b)(6) Notice of Deposition served by Plaintiffs on October 26, 2009, seeking testimony regarding the Fidelity LPS platform. Reese Decl., Exs. 4 at 2 and 5 at 1.  The parties are now in the process of seeking to resolve the outstanding issues surrounding the production of the Fidelity documents sought by Plaintiffs with the incipient involvement of Fidelity's in-house counsel and have an initial conference call with Fidelity's counsel scheduled for October 1, 2010.  Reese Decl., ¶ 12 and Exs. 4 at 1 and 5 at 1.  The Rule 30(b)(6) deposition regarding the Fidelity LPS platform is scheduled to take place on October 27, 2010.  *Id.* at ¶ 12.

Furthermore, a significant amount of other discovery sought by Plaintiffs' Discovery Requests remains outstanding.  For example, through a protracted meet-and-confer process, the parties have only recently resolved their longstanding dispute as to the protocols for Defendants' production of e-mail and other electronically-stored information ("ESI") and have reached agreement as to the format for production of these documents.  Reese Decl., ¶ 13 and Ex. 5 at 2. Pursuant to the parties' agreement, Defendants will produce Fidelity ESI in TIFF format with searchable load files and e-mail and non-Fidelity ESI in native format.  *Id.*  Defendants have recently identified likely custodians of responsive e-mail and ESI and have advised Plaintiffs that they are now "in the process of extracting data for the purposes of testing the ESI search terms plaintiffs proposed and … will provide a response once that process is complete."  *Id.* at Ex. 5 at 2.  Thus, while still outstanding, Defendants' production of e-mail and other ESI is now imminent. [4]  Defendants estimate that "all discovery (expert and non-expert) in the case cannot be

---

[4] Additionally, other document discovery requested by Plaintiffs remains outstanding.  For example, Defendants have advised Plaintiffs that they are in the process of searching for documents relating to communications, reports or analyses by Wells Fargo employees relating to

completed until August 2011. Reese Decl., Ex. 6. Plaintiffs respectfully request the Court to require Defendants to produce all outstanding documents responsive to the Discovery Requests on a rolling basis, going forward, in order that Plaintiffs can move forward with the further discovery that they need to take to develop the material facts necessary to establish their claims.

Moreover, to date, Plaintiffs have not taken any deposition discovery in this case because they will not be in a position to do so until Defendants' document production in response to the Discovery Requests is complete. Deposition discovery would not be meaningful in the absence of an opportunity for Plaintiffs to review Defendants' full production, which, among other things, will enable Plaintiffs to identify individuals for deposition.

Lastly, Defendants refuse to produce any documents sought by the Discovery Requests concerning customer complaints or inquiries, recordings (including telephone conversations), other lawsuits against Defendants or threatened against Defendants regarding the property inspection fees and late charges at issue and documents concerning the matter *In re Dorothy Chase Stewart*, No. 07 11113 (Bankr. E.D.La) ("*Stewart*") on grounds of relevance and burdensomeness, primarily.[5]  As shown below, Defendants' objections to producing these documents are frivolous in light of the allegations of the SAC.

---

the property inspection fees and late charges at issue and investor agreements. Reese Decl., ¶ 14 and Ex. 4 at 4.

[5] Defendants also object to producing documents responsive to Plaintiffs' Requests seeking information relating to Defendants' profit and revenues and statistical information and computations regarding Wells Fargo borrowers (collectively, "statistical information") as premature prior to certification, but have committed to addressing the issue post-certification. Reese Decl., Exs. 4 at 3, 5 at 2, 7 at 4 and 8 at 3. Plaintiffs have taken Defendants' request to defer production of this information under advisement because they cannot make an informed decision in this regard until Defendants' document production is complete. Reese Decl., Ex. 3 at 6. Accordingly, Plaintiffs do not seek to compel production of the statistical information on this Motion.

## II. EXTENSION OF THE SCHEDULING ORDER DEADLINES IS WARRANTED

As detailed above, a significant amount of discovery in this case remains outstanding, including a significant portion of the documents sought by Plaintiffs' Discovery Requests and all deposition discovery. Under these circumstances, there is insufficient time, under the current time frames established by the Scheduling Order, for Defendants to complete their document production and for Plaintiffs to have an opportunity to review the outstanding document discovery and to take yet-to-be-noticed deposition discovery. As detailed above, Defendants have yet to produce the lion's share of discovery Plaintiffs seek concerning the Fidelity LPS platform or any e-mail and other ESI. Without the benefit of reviewing this information, as well as the information improperly withheld by Defendants that is the subject of the instant Motion to compel, Plaintiffs are not in a position, for example, to develop the facts necessary to amend their Complaint, submit a class certification motion or provide expert witness disclosures in accordance with the respective October 1, 15 and 26, 2010 deadlines therefor. Moreover, given the current status of discovery and Defendants' estimated time for completion, Plaintiffs will not be in a position to meet the remaining deadlines established by the Scheduling Order.

For these reasons, Plaintiffs respectfully request the Court to extend all Scheduling Order deadlines for the period October 1, 2010 through September 12, 2011 by seven (7) months. Defendants consent to Plaintiffs' request for an extension of time. Reese Decl., ¶ 19 and Ex. 6.

## III. THE DOCUMENTS WITHHELD SHOULD BE PRODUCED.

Under Rule 26(b)(1), the scope of discovery is extremely broad, limited by privilege and relevance. Fed. R. Civ. P. 26(b)(1). Discovery of "any nonprivileged matter" is proper, as long as it is "relevant to the subject matter involved in the action." *Id.* "Relevant information need not

be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* In fact, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense …." *Id.*[6]

Defendants refuse to produce documents sought by the Discovery Requests that relate to customer complaints and inquiries (Document Request Nos. 11, 12, 25, 26 and 36) from individual borrower files and recordings, including telephone conversations (Document Request Nos. 13, 27 and 37), concerning the property inspection fees and late charges at issue, other lawsuits against Defendants or threatened against Defendants challenging the property inspection fees and late charges assessed by Defendants (Document Request No. 47) and documents relating to the *Stewart* matter (Document Request No. 48) on grounds of relevance and burdensomeness, primarily.[7] Defendants' objections are frivolous and should be overruled.

First, the relevance of customer complaints and inquiries regarding the fees and charges from individual borrower files at issue cannot be seriously disputed. As the SAC avers, Defendants made false and misleading representations to borrowers, which constitute unlawful,

---

[6] Defendants have made the assertion that the Discovery Requests do not call for production of internal e-mail discussing property inspection fees or late charges. Reese Decl., Exs. 4 at 4 and 7 at 1 n.1. Defendants' position is absurd given that the Definitions Section of Plaintiffs' First Set of Requests for Production of Documents defines the term "document" to include ESI. While Defendants have represented that they are in the process of preparing to produce the e-mail and other ESI sought by the Discovery Requests and seem to have abandoned this position, *see* Reese Decl., Ex. 4 at 4, to the extent that Defendants intend to withhold any internal e-mails on the basis of this assertion, the Court should overrule this frivolous objection and compel production of these documents.

[7] Defendants have agreed to produce documents concerning customer complaints and inquiries from Wells Fargo's central depository for letters sent to its executive office based on a search using search terms proposed by Defendants and Plaintiffs. Reese Decl., Exs. 4 at 2, 5 at 2 and 8 at 3. Counsel for Defendants have stated, "Wells Fargo is willing to search for executive office complaints ***because of the relative ease of doing so***." Reese Decl., Ex. 4 at 2 (emphasis added).

unfair and fraudulent business practices under California's UCL. ¶ 105. The touchstone for recovery under the UCL is the "reasonable consumer" test. *See, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). A UCL claim must, therefore, "be evaluated from the vantage point of a reasonable consumer." *Id.* Under this standard, Plaintiffs must show that "members of the public are likely to be deceived." *See Bank of West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992). Accordingly, in view of the SAC's allegations, complaints and inquiries made by borrowers concerning property inspection fees, other charges and late charges appearing on their monthly statements are highly probative of Plaintiffs' UCL claims. Indeed, evidence of complaints and inquiries challenging the frequency of property inspections, overcharging and the propriety of the fees and charges assessed buttresses Plaintiffs' claims of unfair and fraudulent business practices and is relevant on its face. Moreover, evidence of customer complaints and inquiries concerning the fees and charges at issue not only establishes the likelihood of deception, but also, is highly probative with respect to defining the objective standard, *i.e.*, what a reasonable consumer is under the circumstances. In addition, such information would reveal potential additional plaintiffs who could be added to this action.[8] For all the same reasons, the recordings, including telephone conversations, between Defendants and consumers regarding the fees and charges at issue are also relevant and should be produced.

---

[8] Defendants assert that, "servicing notes pertaining to individual borrowers are not electronically searchable" and, thus, refuse "to search such records for its 7,000,000+ borrowers to look for documents which might be responsive to these categories." Reese Decl., Exs. 4 at 4, 5 at 2, 7 at 3 and 8 at 2. Defendants' complete refusal to produce any of these documents on this basis is improper. The fact that production of responsive documents would entail the review of millions of borrower account files is not an absolute bar to production. Indeed, as Plaintiffs have proposed during the meet-and-confer process, Defendants can review a smaller universe of customer loan files and produce any responsive documents found as exemplars. *Id.* at Exs. 2 at 2 and 3 at 6. The volume of files on its face is not a categorical bar to discovery of this information and cannot be used as a smokescreen to avoid production of relevant documents.

Second, documents relating to other lawsuits against or threatened against Defendants with respect to the property inspection fees and late charges at issue and documents relating to the *Stewart* matter are highly relevant because they concern the same types of allegations asserted by Plaintiffs in this action and would provide a significant amount of relevant information that is admissible in this case or likely to lead to the discovery of admissible evidence.[9] Moreover, it would be unduly burdensome for Plaintiffs to attempt to obtain this relevant information from the public record. Contrastingly, producing these documents would not impose an undue burden on Defendants. The fact that some (but not all) of the documents sought by Document Request Nos. 47 and 48 are part of the public record does not excuse Defendants from producing them. *See, e.g.*, *Anastasion v. Credit Serv. of Logan, Inc.*, No. 2:08cv180, 2010 U.S. Dist. LEXIS 1329, at *4 (D.Utah Jan. 8, 2010) (rejecting movant's argument that "much of the discovery sought is available as public record and that it would be 'extremely burdensome'" to produce); *Transcap Assocs., Inc. v. Euler Hermes Am. Credit Indem. Co.*, No. 08-C-723, 2009 U.S. Dist. LEXIS 94264, at *20-21 (N.D.Ill. Oct. 9, 2009) ("Even if we were to assume … that all relevant regulatory filings are part of the public record, that does not relieve defendant of its burden of production. It is apparent that [plaintiff] has a more limited knowledge of [defendant's] business practices, and therefore it would be more burdensome for plaintiff to locate responsive materials."); *Pantages v. Cardinal Health 200, Inc.*, No. 5:08-cv-116-Oc-10GRJ, 2009 U.S. Dist. LEXIS 36203, at *8 n.4 (M.D.Fla. Apr. 15, 2009)

---

[9] During a meet-and-confer telephone conference on September 16, 2010, counsel for Defendants stated that there is another class action pending against Wells Fargo involving late fees. In a subsequent meet-and-confer telephone conference on September 23, 2010, counsel for Defendants reiterated Defendants' position set forth in Defendants' September 23, 2010 letter that Defendants refuse to produce any documents concerning other actions against Defendants relating to property inspection fees and late charges. Reese Decl., Ex. 5 at 2.

("To the extent the Defendant has objected to the discovery requests on the grounds that some of the records are available in the public record, the objection is overruled."); *Equal Employment Opportunity Comm'n v. HWCC-Tunica, Inc.*, No. 2:07CV171-B-A, 2008 U.S. Dist. LEXIS 85830, at *21 (N.D.Miss. Oct. 6, 2008) ("[A] party must produce all responsive documentation within its control, regardless of whether the documents are public record. Therefore, defendant is ordered to provide all responsive documentation to plaintiff.").

## IV. **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request the Court to issue Orders granting their Motion, pursuant to Rules 7 and 16 of the Local Rules of the United States District Courts for the Northern and Southern Districts of Iowa, for an Order extending all deadlines for the period October 1, 2010 through September 12, 2011, established by the Order Adopting Scheduling Order and Discovery Plan, Setting Trial and Final Pretrial entered on February 5, 2010 by seven (7) months and granting their Motion, pursuant to Rules 26, 33, 34 and 37 of the Federal Rules of Civil Procedure and L.R. 7 and 37 for an Order compelling Defendants to produce all relevant documents responsive to Plaintiffs' discovery requests that they have refused to produce and granting such other and further relief as the Court deems just, proper and equitable.

Dated: October 1, 2010                                **Respectfully submitted,**

| | |
|---|---|
| **ROXANNE CONLIN & ASSOCIATES, P.C.** | */s/ Michael R. Reese* |
| Roxanne Conlin | Michael R. Reese (*Lead Counsel*) |
| 319 Seventh Street, Suite 600 | **REESE RICHMAN LLP** |
| Des Moines, Iowa 50309 | 875 Sixth Avenue, 18th Floor |
| Telephone: (515) 283-1111 | New York, New York 10001 |
| Facsimile: (515) 282-0477 | Telephone: (212) 579-462 |
| Email: roxlaw@aol.com | Facsimile: (212) 253-4272 |
| | Email: michael@reeserichman.com |

| | |
|---|---|
| **WHATLEY DRAKE & KALLAS, LLC**<br>Deborah Clark-Weintraub<br>1540 Broadway 37th Floor<br>New York, New York 10036<br>Email:  dweintraub@wdklaw.com | **WHATLEY DRAKE & KALLAS, LLC**<br>Sara Hacker<br>2001 Park Place North<br>Birmingham, Alabama 3520<br>Email:  shacker@wdklaw.com |

**STROM LAW FIRM, LLC**
Mario Pacella
210 N. Beltine Blvd, Suite A
Columbia, South Carolina 29204
Email:  mpacella@stromlaw.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing **Plaintiff's Brief in Support of Their Motion to Extend Scheduling Order Deadlines and Motion to Compel Production of Documents (Oral Argument Requested)** was served upon the following parties through the Court's CM/ECF electronic filing system on the 1st day of October, 2010.

*/s/ Michael R. Reese*
Michael R. Reese

Copies to:

**Michael A Giudicessi**
mgiudicessi@faegre.com

**Mark D. Lonergan**
mdl@severson.com

**John B Sullivan**
jbs@severson.com

**Michael J Steiner**
mjs@severson.com

**Joshua Eric Whitehair**
jew@severson.com