**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF IOWA**

**CENTRAL DIVISION**

| | |
|---|---|
| GREGORY YOUNG; ODETTA YOUNG; EDWARD HUYER; CONNIE HUYER; and SUE ANN ROSS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>WELLS FARGO & CO., and WELLS FARGO BANK, N.A.,<br><br>Defendants. | No. 4:08-cv-00507<br><br>**DEFENDANTS' ANSWER TO THIRD AMENDED CLASS ACTION COMPLAINT** |

Defendants Wells Fargo & Co. ("WFC") and Wells Fargo Bank, N.A. ("WFB") (collectively "Defendants") hereby answer the Third Amended Class Action Complaint ("TAC") of plaintiffs Edward and Connie Huyer (the "Huyers"), Carlos Castro ("Castro"), and Hazel P. Navas ("Navas") (collectively "Plaintiffs") as follows. Defendants reserve the right to supplement or modify their Answer as Plaintiffs elaborate on their allegations, new information is discovered, or new defenses or theories are developed.

In response to the TAC's preamble, Defendants admit that the Court's Text Order of March 21, 2011, set a deadline of July 5, 2011, for adding parties and amending pleadings. Except as admitted, Defendants deny the allegations in the preamble to the TAC.

**NATURE OF THE CASE**

1. Defendants deny the allegations of paragraph 1.

2. Defendants deny the allegations of paragraph 2.

3. Defendants deny the allegations of paragraph 3.

4. In response to paragraph 4, Defendants admit that the United States Bankruptcy Court for the Eastern District of Louisiana issued an order in the case of *In re Dorothy Chase Stewart*, No. 07-11113 (Bankr. E.D. La.) ("*Stewart*"), which is currently on appeal to the Fifth Circuit Court of Appeals. Defendants deny the remaining allegations in paragraph 4, and deny that they engaged in any unlawful conduct.

5. In response to paragraph 5, Defendants deny that the *Stewart* opinion extends beyond the factual allegations regarding Dorothy Stewart's bankruptcy. Defendants further deny Plaintiffs' characterization of the findings of fact and law in *Stewart* with respect to the assessment of property inspection fees and late charges. Defendants further deny that inspections were never read or reviewed by any of Defendants' employees. Defendants further deny that they were a profit-generating mechanism that was not necessary to safeguard the lender's interests. To the extent that any further response is necessary, Defendants deny the allegations.

6. In response to paragraph 6, Defendants admit that the quotes are from the *Stewart* order but deny that Defendants have a corporate practice that fails to notify borrowers that fees, costs or charges are being assessed, and deny that Defendants' assessment of fees and charges is unwarranted or abusive. To the extent that any further response is necessary, Defendants deny the allegations.

7. In response to paragraph 7, Defendants admit that the Senate subcommittee convened hearings to consider such allegations, and admit that the quoted observation was made by Senator Charles E. Schumer. Defendants deny that Senator Schumer's comment was directed at Defendants or the fees at issue in this lawsuit, and Defendants deny that they have engaged in any unlawful or unreasonable practice regarding such fees. To the extent that any further response is necessary, Defendants deny the allegations.

8. In response to paragraph 8, Defendants admit the *Stewart* opinion observed that the assessment of late and inspection fees has generated hundreds of millions of dollars in

revenues for Defendants, but Defendants deny that they have profited from any fraudulent scheme or have otherwise obtained revenue illegally. To the extent that any further response is necessary, Defendants deny the allegations.

9. In response to paragraph 9, Defendants deny that they have engaged in any scheme and deny that they have charged or collected any improper, unwarranted or unreasonable fees. Defendants are without sufficient knowledge or information to form a belief as to the reason Plaintiffs have brought this action and, on that basis, Defendants deny that allegation. To the extent that any further response is necessary, Defendants deny the allegations.

10. Defendants deny the allegations of paragraph 10.

## JURISDICTION

11. In response to paragraph 11, Defendants admit that the Court has jurisdiction over the subject matter of this action; admit that the Court has personal jurisdiction over Defendants; admit that Wells Fargo Home Mortgage ("WFHM") is a division of WFB and is headquartered in Des Moines, Iowa; and, admit that WFC has its principal place of business in California. Defendants deny that it is appropriate to apply the California UCL to the claims of borrowers who comprise the putative nationwide class, and deny that they engaged in any wrongdoing.

12. In response to paragraph 12, Defendants admit that venue is proper in this district and that WFHM does business within the Southern District of Iowa.

13. Defendants deny the allegations of paragraph 13.

14. In response to paragraph 14, Defendants are without sufficient knowledge or information to form a belief as to whether the undefined activities were within the flow of, and had a substantial effect on, interstate commerce and, on that basis, Defendants deny the allegations in paragraph 14.

15. In response to paragraph 15, Defendants are without sufficient knowledge or information to form a belief as to the Huyers' current marital status and place of residence and, on that basis, deny the allegation.

16. In response to paragraph 16, Defendants are without sufficient knowledge or

information to form a belief as to Carlo Castro's and Hazel Navas's current marital status and place of residence and, on that basis, deny the allegation.

17. In response to paragraph 17, Defendants admit that WFC is a financial services company headquartered in San Francisco, California, and admit that WFB is a wholly owned subsidiary of WFC. Defendants admit that the quoted statement appears on the Wells Fargo website but deny that the it can be found at https://www.wellsfargo.com/ _jumpmortgageprinciples. Defendants deny that WFC exercises specific and financial control over the operations of WFB, dictates the policies and practices of WFB, exercises power and control over the specific activities upon which Plaintiffs' claims are based, or is the ultimate recipient of any ill-gotten gains. Defendants further deny that they received any ill-gotten gains from Plaintiffs or putative class members.

18. In response to paragraph 18, Defendants admit that WFB is a subsidiary of WFC and admit that WFB is a citizen of South Dakota, the state in which its main office is located as designated in its articles of association. Defendants further admit that WFHM is a division of WFB, is headquartered in Des Moines, Iowa, services mortgages, and serviced Plaintiffs' mortgages. Defendants deny that a "Class Period" is specified in the TAC. Except as expressly admitted, Defendants deny the allegations of paragraph 18.

19. Defendants are without sufficient knowledge or information to form a belief as to the truth of allegations contained in paragraph 19 and, on that basis, deny each allegation contained therein.

20. In response to paragraph 20, Defendants admit that Plaintiffs' mortgage payments were due the first of each month and that their payments were considered late if not received by WFB by the end of fifteen calendar days after the date they were due. Defendants further admit that Plaintiffs' promissory notes provided that a late charge in the amount of 5% of the overdue payment of principal and interest would be assessed in the event that a payment was late. Defendants also admit that Plaintiffs' mortgages permitted WFB "to do and pay whatever is

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . ." Defendants are without sufficient knowledge or information to form a belief as to the remaining allegations in paragraph 20, and on that basis deny those allegations.

21. In response to paragraph 21, Defendants are without sufficient knowledge or information to form a belief as to whether the "vast majority" of borrowers make their monthly mortgage payments to mortgage servicing companies rather than the original lender or current holder of the mortgage note and, on that basis, they deny this allegation. Defendants admit that WFB currently services approximately 7.7 million residential mortgage loans. Except as admitted, Defendants deny the allegations in paragraph 21.

22. Defendants admit the allegations in paragraph 22.

23. In response to paragraph 23, Defendants admit that WFB services residential mortgage loans on behalf of other note holders and investors pursuant to servicing agreements, that WFB earns a fixed fee for servicing residential mortgage loans, and that WFB retains certain fees paid by borrowers. Defendants are without sufficient knowledge or information to form a belief as to the allegation that WFB earns "float" income and, on that basis, deny the allegation.

24. Defendants deny the allegations of paragraph 24.

25. Defendants deny the allegations of paragraph 25.

26. Defendants admit the allegations of paragraph 26.

27. In response to paragraph 27, Defendants admit that the Fidelity MSP system incorporates computer logic, and that certain events trigger "automatic action on the loan file." Defendants further admit that various servicing guidelines are imported into Fidelity MSP's computer logic and "automatically applied." Defendants are without sufficient knowledge or information to form a belief as to whether "wrap around" software packages assess "other charges and fees" and, on that basis, deny those allegations.

28. In response to paragraph 28, Defendants admit that Fidelity MSP will transmit an order that a property inspection be conducted on the borrower's property, and charge the

borrower's account a property inspection fee, after the loan has been in default for a certain number of days, generally 45 days. Defendants deny that property inspections are ordered without regard to whether there is reasonable need for an inspection, and deny the remaining allegations of paragraph 28.

29. In response to paragraph 29, Defendants admit that the Fidelity MSP system orders property inspections on an automated basis, but deny that no person or employee of WFB is involved in the determination of whether a property inspection is reasonably necessary to protect the lender's interest in the property.

30. Defendants admit the allegations of paragraph 30.

31. In response to paragraph 31, Defendants admit that, when an approved vendor receives a property inspection order, it will perform a property inspection and the cost will be charged to the borrower's account, unless the property inspection order is cancelled by WFB.

32. In response to paragraph 32, Defendants admit that the vendor uploads completed property inspection reports directly to WFB's computer system. Defendants deny that the computer system, rather than any person, checks the condition of the property and alerts WFB if a property is at risk.

33. In response to paragraph 33, Defendants deny that WFB's computer system will continue to order property inspections every 20 to 45 days until the borrower cures the default. Defendants admit that, if a borrower misses a monthly payment but continues to make periodic monthly payments thereafter, the account is considered to be in default until the initial default is cured. Defendants are without sufficient knowledge or information to form a belief as to the remaining allegations of paragraph 33 and, on that basis, deny those allegations.

34. In response to paragraph 34, Defendants deny that property inspections are ordered without any human decision-making but admit that, in some cases, property inspections may be ordered even if prior inspections were conducted and the property was previously deemed to be occupied, well-maintained and in good condition.

35. In response to paragraph 35, Defendants deny that WFB's practices contravene or are inconsistent with FHA guidelines for property inspections. Defendants further deny that, for FHA loans, WFB conducts property inspections every 20 to 45 days until a borrower cures a default regardless of whether the previous inspection revealed that the house was occupied, regardless of whether WFB has made contact with the borrower, and regardless of whether the borrower continues to make payments.

36. Defendants deny the allegations of paragraph 36.

37. Defendants deny the allegations of paragraph 37.

38. In response to paragraph 38, Defendants deny Plaintiffs' characterization of the findings of fact and law in *Stewart* with respect to the assessment of property inspection fees. In addition, Defendants contest the opinion in *Stewart*, which is currently on appeal to the Fifth Circuit Court of Appeals, and contest the application of *Stewart* to any other account, facts or circumstances which were not considered by the Court in that case. Defendants further deny that property inspection fees create more "float" income or boost Defendants' "bottom line."

39. In response to paragraph 39, Defendants admit that electronic files of property inspections are maintained by WFB and that in some property inspections, the inspector does not physically enter the borrower's home. Defendants deny that all property inspections are inspections in which the inspector does not physically enter the home, and deny that an inspection in which an inspector does not physically enter the home provides little if any real opportunity to determine whether the lender's interest in the property is at risk. Defendants further deny that computer-ordered property inspections are unreasonable, confer no benefit on the lender or serve no discernable purpose other than to generate revenue for WFB. Defendants further deny that the property inspection reports are not reviewed, and deny that the observations in inspection reports have no bearing on whether subsequent inspections are ordered.

40. In response to paragraph 40, Defendants admit that WFB sends personalized monthly mortgage statements by mail to each Plaintiff and other borrowers. Except as admitted, Defendants deny the allegations of paragraph 40.

41. In response to paragraph 41, Defendants admit that the Huyers entered into a mortgage agreement with WFB. Defendants are without sufficient knowledge or information to form a belief as to the remaining allegations in paragraph 41 and, on that basis, deny those allegations.

42. Defendants admit the allegations of paragraph 42.

43. Defendants admit the allegations of paragraph 43.

44. In response to paragraph 44, Defendants admit that WFB sent personalized monthly mortgage statements to the Huyers through the U.S. mail reflecting, among other things, prior payment history and the amount of payment due.

45. In response to paragraph 45, Defendants are without sufficient knowledge or information to form a belief as to whether the Huyers faced difficulty in making timely payments on their loans and, on that basis, Defendants deny the allegation. Defendants admit that the Huyers were periodically in default on their mortgages, and that WFB charged the Huyers fees. Defendants deny that any fees were assessed unlawfully or pursuant to a fraudulent scheme.

46. In response to paragraph 46, Defendants admit that the Huyers were charged for property inspections. Defendants are without sufficient knowledge or information to form a belief as to the remaining allegations in this paragraph and, on that basis, Defendants deny those allegations.

47. In response to paragraph 47, Defendants are without sufficient knowledge or information to form a belief as to whether the Huyers were unable to make their July 1, 2007 monthly payments on time, and on that basis Defendants deny that allegation. As to the allegations regarding the content of the mortgage statement sent to the Huyers, Defendants respond that the statement speaks for itself. Except as admitted, Defendants deny the allegations in paragraph 47.

48. In response to paragraph 48, Defendants admit that the Huyers frequently missed their mortgage payments or made those payments late, and that the parties entered into a mitigation plan with respect to the loans. As to the allegations in paragraph 48 regarding the

content of monthly statements sent to the Huyers, Defendants respond that those statements speak for themselves. Defendants deny that any late fees were wrongfully assessed on the Huyers.

49. In response to paragraph 49, Defendants admit that the Huyers were charged for property inspections but deny that those inspections were unreasonable or unnecessary.

50. In response to paragraph 50, Defendants are without sufficient knowledge or information to form a belief as to whether the Huyers continuously occupied their home and, on that basis, deny that allegation. Defendants deny that the property inspections were not necessary to protect the lender's interest, deny that property inspections were ordered to generate additional fees and "float" income for WFB, deny that WFB profits from the assessment of property inspection fees, and deny that the property inspections served no legitimate purpose.

51. In response to paragraph 51, Defendants admit that the Huyers periodically failed to make mortgage payments or made payments late and that, in such instances, the Huyers were assessed a late charge. Except as admitted, Defendants deny the allegations in paragraph 51.

52. As to the allegations in paragraph 52 regarding the content of monthly statements sent to the Huyers, Defendants respond that those statements speak for themselves. Defendants deny that any late fees were wrongfully assessed the Huyers.

53. In response to paragraph 53, Defendants admit that they currently hold the servicing rights related to a loan taken out by the Castros. Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 53, and on that basis deny them.

54. Defendants admit the allegations of paragraph 54.

55. Defendants admit the allegations of paragraph 55.

56. In response to paragraph 56, Defendants admit that WFB sent personalized monthly mortgage statements to the Castros through the U.S. mail reflecting, among other things, prior payment history and the amount of payment due.

57. In response to paragraph 57, Defendants are without sufficient knowledge or

information to form a belief as to whether the Castros faced difficulty in making timely payments on their loans and, on that basis, Defendants deny the allegation. Defendants admit that the Castros were periodically in default on their mortgage, and that WFB charged the Castros fees. Defendants deny that any fees were assessed unlawfully or pursuant to a fraudulent scheme.

58. In response to paragraph 58, Defendants admit that the Castros were charged for property inspections. Defendants are without sufficient knowledge or information to form a belief as to the remaining allegations in this paragraph and, on that basis, Defendants deny those allegations.

59. In response to paragraph 59, Defendants are without sufficient knowledge or information to form a belief as to whether the Castros were unable to make their November 2010 monthly periodic payment on time, and on that basis Defendants deny that allegation. Defendants admit that the Castros were charged property inspection fees on December 3, 2010; January 27, 2011; February 25, 2011; April 27, 2011; May 27, 2011; and June 27, 2011. Except as admitted, Defendants deny the remaining allegations in paragraph 59.

60. Defendants deny the allegations in paragraph 60.

61. Defendants deny that the property inspections were not necessary to protect the lender's interest in the property and deny that the inspections were merely conducted to generate additional fees and "float" income for WFB.

62. In response to paragraph 62, Defendants admit that when the Castros failed to make mortgage payments or made payments late, the Castros were assessed a late charge. Except as admitted, Defendants deny the allegations in paragraph 62.

63. Defendants admit that the Castros were charged late fees on the dates stated in paragraph 63. Except as admitted, Defendants deny the allegations in paragraph 63.

**RICO ALLEGATIONS**

64. Defendants admit the allegations of paragraph 64.

65. In response to paragraph 65, Defendants admit that the named vendors conducted property inspections and that the fees for those inspections were billed to the accounts of Plaintiffs and putative class members. Except as admitted, Defendants deny the allegations in paragraph 65.

66. Defendants deny the allegations of paragraph 66.

67. Defendants deny the allegations of paragraph 67.

68. Defendants deny the allegations of paragraph 68.

69. Defendants deny the allegations of paragraph 69.

70. In response to paragraph 70, Defendants admit that the Fidelity MSP system automatically transmits orders for property inspections; that vendors perform the property inspections; that vendors upload completed property inspection reports to WFB's computer system; that borrowers are assessed fees for these property inspections; and, that WFB collects payments from some borrowers which include additional amounts for property inspection fees. Except as admitted, Defendants deny the allegations of paragraph 70.

71. Defendants deny the allegations of paragraph 71.

**PREDICATE ACTS**

72. In response to paragraph 72, Defendants admit that section 1961(1) of RICO provides that "racketeering activity" includes acts indictable under 18 U.S.C. §§ 1341 and 1343. Defendants deny that they have violated these laws, or any of them, and deny that they have effectuated any fraudulent scheme.

**VIOLATIONS OF 18 U.S.C. § 1314 AND 18 U.S.C. § 1343**

73. In response to paragraph 73, Defendants admit that WFB sent and/or received monthly mortgage statements, correspondence and checks through the U.S. mail. Except as admitted, Defendants deny the remaining allegations in paragraph 73.

74. In response to paragraph 74, Defendants admit that WFB transmitted and received correspondence, wire transfers and inspection reports. Except as admitted, Defendants deny the remaining allegations in paragraph 74.

75. In response to paragraph 75, Defendants admit that WFB sent via the Postal Service monthly mortgage statements and correspondence. Except as admitted, Defendants deny the remaining allegations in paragraph 75.

76. Defendants deny the allegations of paragraph 76.

77. In response to paragraph 77, Defendants admit that mortgage statements sent to Plaintiffs and putative class members detail the amounts due on their loans. Except as admitted, Defendants deny the remaining allegations in paragraph 77.

78. Defendants deny the allegations of paragraph 78.

79. Defendants deny the allegations of paragraph 79.

80. Defendants deny the allegations of paragraph 80.

**PATTERN OF RACKETEERING ACTIVITY**

81. Defendants deny the allegations of paragraph 81.

82. Defendants deny the allegations of paragraph 82.

**RICO VIOLATIONS**

83. No response is required for paragraph 83 which is a partial quote from 18 U.S.C. § 1962(c).

84. Defendants deny the allegations of paragraph 84.

85. Defendants deny the allegations of paragraph 85.

**CLASS ACTION ALLEGATIONS**

86. In response to paragraph 86, Defendants deny that this action is appropriate for class certification. No further response is required to paragraph 86, as it is merely a proposed definition of Plaintiffs' putative class. To the extent that any further response is necessary, Defendants deny the allegations.

87. In response to paragraph 87, Defendants deny that this action is appropriate for class certification. No further response is required to paragraph 87 as it is merely a refinement to the proposed definition of Plaintiffs' putative class. To the extent that any further response is necessary, Defendants deny the allegations.

88. Defendants are without sufficient knowledge or information to form a belief as to the truth of allegations in paragraph 88 and, on that basis, deny each allegation contained therein.

89. In response to paragraph 89, Defendants deny that any putative class member has been subjected to or affected by any unlawful or unreasonable practice alleged in the TAC. Defendants further deny that questions of law and fact are common to the putative class, and deny that common issues predominate over questions affecting only individual putative class members.

90. In response to paragraph 90, Defendants deny that Plaintiffs or putative class members were subjected to any wrongful policies or practices by Defendants. Defendants are without sufficient knowledge or information to form a belief as to the remaining allegations in paragraph 90 and, on that basis, deny those allegations.

91. Defendants are without sufficient knowledge or information to form a belief as to the allegations in paragraph 91 and, on that basis, deny those allegations.

92. Defendants deny the allegations of paragraph 92.

93. Defendants deny the allegations of paragraph 93.

94. Defendants deny the allegations of paragraph 94.

95. Defendants deny the allegations of paragraph 95.

96. Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 96 and, on that basis, deny each allegation contained therein.

97. Defendants deny the allegations of paragraph 97.

## CAUSES OF ACTION

### COUNT I

98. In response to paragraph 98, Defendants incorporate and reallege their admissions, denials, and answers to paragraphs 1 through 97.

99. Defendants deny the allegations of paragraph 99.

100. Defendants deny the allegations of paragraph 100.

101. Defendants deny the allegations of paragraph 101.

102. Defendants deny the allegations of paragraph 102.

**COUNT II**

103. In response to paragraph 103, Defendants incorporate and reallege their admissions, denials, and answers to paragraphs 1 through 102.

104. Defendants deny the allegations of paragraph 104.

105. Defendants deny the allegations of paragraph 105.

106. Defendants deny the allegations of paragraph 106.

107. Defendants deny the allegations of paragraph 107.

* * *

In addition, Defendants also assert the following affirmative defenses to the TAC. Defendants assert and reserve the right to amend these Affirmative Defenses to assert additional defenses as they may become known to the Defendants.

**First Affirmative Defense**

(Standing)

Plaintiffs lack standing to pursue the claims alleged in the TAC.

**Second Affirmative Defense**

(Compliance with Governing Statutes)

Defendants are not liable to Plaintiffs, or the putative class members they purportedly represent, by reason of their compliance with applicable statutes, laws and regulations.

**Third Affirmative Defense**

(Contractual Limitation)

Defendants' liability in this action, if any, is limited pursuant to all applicable contracts, covenants, conditions, restrictions, and bylaws operating as between the parties or the contract or

contracts pursuant to which Defendants performed which is the subject of this action.

**Fourth Affirmative Defense**

(Performance)

Plaintiffs' claims, and claims of the putative class they purportedly represent, are barred in whole or in part by reason of Defendants' performance. Prior to commencement of this action, Defendants duly performed, satisfied and discharged all duties and obligations they may have owed to Plaintiffs action arising out of any and all agreements, representations or contracts made by Defendants or on behalf of Defendants, or the contract or contracts pursuant to which Defendants performed which are the subject of this action.

**Fifth Affirmative Defense**

(Consent/Ratification)

Plaintiffs, and the putative class members they purportedly represent, consented to all of Defendants' acts or omissions which gave rise to the occurrences alleged in the TAC, and subsequently ratified that conduct.

**Sixth Affirmative Defense**

(Waiver and Estoppel)

Plaintiffs, and the putative class members they purportedly represent, have waived and are estopped from seeking the recovery prayed for in the TAC.

**Seventh Affirmative Defense**

(Unclean Hands)

Plaintiffs' claims, and the claims of the putative class they purport to represent, are barred in whole or in part by the doctrine of unclean hands.

**Eighth Affirmative Defense**

(Laches)

Plaintiffs' claims, and the claims of the putative class they purport to represent, are barred in whole or in part by the doctrine of laches.

**Ninth Affirmative Defense**

(Statute of Limitations)

Plaintiffs' claims, and the claims of the putative class they purport to represent, are barred, in whole or in part, by the applicable statutes of limitations.

**Tenth Affirmative Defense**

(Damages Speculative)

Plaintiffs' alleged damages, and the damages of the putative class they purport to represent, if any, are speculative or uncertain and therefore not compensable, in whole or in part.

**Eleventh Affirmative Defense**

(Contract Terms)

Plaintiffs' claims, and the claims of the putative class they purport to represent, are barred, in whole or in part, by virtue of the terms and provisions of their contracts with Defendants.

**Twelfth Affirmative Defense**

(Failure to Mitigate)

Plaintiffs, and members of the putative class they purport to represent, have failed to mitigate or attempt to mitigate damages, if in fact any damages have been or will be sustained, and any recovery by Plaintiffs must be diminished or barred by reason thereof.

**Thirteenth Affirmative Defense**

(Protection Against Excessive Fines/Substantive Due Process)

The TAC, to the extent that it seeks statutory or punitive damages, including on behalf of

the putative class, violates the rights of the Defendants to protection from excessive fines as provided in the United States Constitution, and violates the rights of the Defendants to substantive due process as provided in the United States and California Constitutions, and therefore fails to state facts sufficient to constitute a cause of action upon which punitive, statutory or exemplary damages may be awarded.

**Fourteenth Affirmative Defense**

(Procedural Due Process)

The TAC, to the extent that it seeks statutory or punitive damages, including on behalf of the putative class, violates the rights of the Defendants to procedural due process under the United States and California Constitutions and therefore fails to state facts sufficient to constitute a cause of action upon which punitive, exemplary, or statutory damages may be awarded.

**Fifteenth Affirmative Defense**

(Accord and Satisfaction)

Plaintiffs' claims, and the claims of the putative class they purport to represent, are barred, in whole or in part, by the doctrine of accord and satisfaction.

**Sixteenth Affirmative Defense**

(Comparative Fault)

Plaintiffs did not exercise ordinary care, caution and prudence in connection with the transactions and events alleged within the TAC, and Plaintiffs are, therefore, barred entirely from recovery against Defendant or, alternatively, Plaintiffs should have their recovery, if any, proportionally reduced.

**Seventeenth Affirmative Defense**

(Res Judicata)

Plaintiffs' claims, and the claims of the putative class they purport to represent, are

barred, in whole or in part, by the doctrines of estoppel, res judicata and/or release.

**Eighteenth Affirmative Defense**

(Set Off)

Plaintiffs' claims, and the claims of the putative class they purport to represent, are subject to set-off of all sums due and owing to Defendants.

**Nineteenth Affirmative Defense**

(No Injury/Standing)

Plaintiffs' claims, and the claims of the putative class they purport to represent, are barred because Plaintiffs and the purported class members have not suffered any injury and, thus, lack standing to bring their claims.

**Twentieth Affirmative Defense**

(Federal Preemption)

Plaintiffs' claims, and the claims of the putative class they purport to represent, are preempted by the National Banking Act and governing regulations.

**Twenty-First Affirmative Defense**

(Conduct Not "Unfair" or "Fraudulent" – Business Justification)

The challenged practices of Defendants are not unfair, deceptive, unlawful, fraudulent, or unconscionable within the meaning of Business and Professions Code section 17200 *et seq.* and the utility of the practices outweigh any potential harm.

**Twenty-Second Affirmative Defense**

(Conduct Not Likely to Mislead)

Defendants' practices alleged in the Third Amended Complaint were not likely to mislead and, in fact, did not mislead Plaintiffs or any other individuals.

WHEREFORE, Defendants pray as follows:

1. That Plaintiffs take nothing by reason of their Third Amended Complaint; that their claims for relief be denied; and that judgment be rendered in favor of Defendants;

2. That Defendants be awarded their costs of suit incurred in defense of this action;

3. For such relief as the Court deems proper.

Dated: July 22, 2011

**SEVERSON & WERSON,**
A PROFESSIONAL CORPORATION

*/s/ Mark D. Lonergan*
Mark D. Lonergan, *Lead Counsel**
*E-mail:* *mdl@severson.com*
Michael J. Steiner*
*E-mail:* *mjs@severson.com*
Michelle T. McGuinness*
*E-mail:* *mtm@severson.com*
M. Elizabeth Holt*
E-mail: *meh@severson.com*
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439
** Admitted Pro Hac Vice*

**FAEGRE & BENSON LLP**

Michael A. Giudicessi
*E-mail:* *mgiudicessi@faegre.com*
Emily S. Hildebrand Pontius
*E-mail:* *epontius@faegre.com*
801 Grand Avenue, Suite 3100
Des Moines, Iowa 50309-8002
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

Attorneys for Defendants

**Certificate of Service**

The undersigned hereby certifies that a true copy of the foregoing **Defendants' Answer To Third Amended Class Action Complaint** was served upon the following parties through the Court's CM/ECF electronic filing system on the 22nd day of July, 2011.

/s/ Juli Carter

Copy to:
Michael Reese
*michael@reeserichman.com*
Belinda L. Williams
*bwilliams@reeserichman.com*
Deborah Clark-Weintraub
*dweintraub@wdklaw.com*
J. Preston Strom, Jr.
*petestrom@stromlaw.com*

Kim Richman
*kim@reeserichman.com*
Mario Pacella
*mpacella@stromlaw.com*
Roxanne Barton Conlin
*roxlaw@aol.com*
Sara C. Hacker
*shacker@wdklaw.com*

*Attorneys for Plaintiffs*

John B. Sullivan
*jbs@severson.com*
Mark D. Lonergan
*mdl@severson.com*
Michael J. Steiner
*mjs@severson.com*
M. Elizabeth Holt
*meh@severson.com*

*Attorneys for Defendants*