# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| GREGORY YOUNG, et al., | Case No. 4:08-cv-507-RP-CFB |
| Plaintiffs, | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| WELLS FARGO & CO., and WELLS FARGO BANK, N.A., | |
| Defendants. | |

Plaintiffs Edward Huyer, Connie Huyer, Carlos Castro, and Hazel Navas-Castro (collectively, "Plaintiffs"), on behalf of the proposed Class, respectfully submit this Memorandum of Law in support of their unopposed motion for: (i) preliminary approval of the proposed settlement between Plaintiffs and Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Defendants") embodied in the Stipulation of Settlement dated August 21, 2015 (the "Stipulation");[1] (ii) certification of the proposed Settlement Class stipulated to by the Parties for purposes of the Settlement; (iii) approval of the form and manner of distribution of Notice to the proposed Settlement Class; and (iv) the scheduling of a hearing (the "Settlement Fairness Hearing") to consider, among other things, final approval of the Settlement, the Plan of Allocation, Plaintiffs' request for service payments, and Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.

---

[1] Unless otherwise defined herein, all capitalized terms used herein shall have the meanings provided in the Stipulation. A copy of the Stipulation is attached as Exhibit 1 to the accompanying Declaration of Deborah Clark-Weintraub in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (the "Weintraub Declaration").

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................2

II.     SUMMARY OF THE ACTION........................................................................................3

III.    SETTLEMENT NEGOTIATIONS ..................................................................................4

IV.     SUMMARY OF THE PROPOSED SETTLEMENT..........................................................5

V.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............7

        A.    The Merits of Plaintiffs' Case Weighed Against the Terms of the
              Settlement Justify Preliminary Approval of the Settlement ..................................10

        B.    The Defendants' Financial Condition Is a Neutral Factor .....................................11

        C.    There Are Significant Risks, Complexity, and Expense Inherent In
              Continued Prosecution of the Case Against Defendants ......................................11

VI.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
        SETTLEMENT PURPOSES PURSUANT TO FED. R. CIV. P. 23 ...............................14

        A.    The Proposed Settlement Class Meets All of the Prerequisites of Fed. R.
              Civ. P. 23(a) ........................................................................................................14

        B.    The Proposed Settlement Class Satisfies the Prerequisites of Fed. R. Civ.
              P. 23(b)(3) ...........................................................................................................16

VII.    THE COURT SHOULD APPROVE THE FORM AND CONTENT OF THE
        PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS ...................................17

VIII.   PROPOSED SCHEDULE OF EVENTS.........................................................................19

VIII.   CONCLUSION.............................................................................................................20

## I.      INTRODUCTION

After more than seven years of hard-fought litigation, the parties have reached an
agreement to settle this action pursuant to the terms of the Stipulation.  The proposed Settlement
provides for a cash payment of $25,750,000, which includes $3,250,000 to cover the costs of
notice and administration, in exchange for the dismissal of the Released Claims described in

¶2.28 of the Stipulation.  The Settlement is the product of complex and hard-fought litigation, followed by six months of intensive arm's-length settlement negotiations, requiring substantial assistance from a highly respected mediator, Hon. Arthur J. Boylan, a former United States Magistrate Judge (Ret.).  Plaintiffs respectfully submit that the Settlement provides an immediate and favorable resolution for the Settlement Class.

By the time the Settlement was reached, this action had been thoroughly litigated, and the Plaintiffs were fully informed about the strengths and weaknesses of the case. Indeed, the Settlement was possible only after Plaintiffs: (1) defeated a motion to dismiss; (2) obtained class certification; (3) defeated Defendants' effort to take a Fed. R. Civ. P. 23(f) appeal of this Court's class certification decision; (4) conducted and nearly completed fact discovery, which included the production, review and analysis of over 50,000 pages of documents by Plaintiffs, Defendants and third parties, and more than 13.5 gigabytes of loan level data produced by Wells Fargo, as well as taking/defending a total of 12 depositions; and (5) consultations with experts.

Plaintiffs and their Counsel – based upon their extensive evaluation of the legal and factual basis for their claims and their recognition of the risk and expense of continued litigation surrounding these claims – submit that the proposed Settlement is fair, reasonable and adequate and is in the best interests of the Settlement Class.  For the reasons set forth herein, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the Proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") so that notice may be provided to the Settlement Class.  *See* Exhibit 2 to the Weintraub Declaration.

## II.    SUMMARY OF THE ACTION

Filed in 2008, this class action alleged that Defendants, in servicing mortgage loans,

violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq.* ("RICO"), and California's Unfair Competition Law in connection with their assessment and charging of property inspection fees ("Inspection Fees").  Plaintiffs alleged that Wells Fargo ordered a property inspection whenever a borrower fell behind on mortgage payments by 45 days or more, and then ordered subsequent inspections every 25 to 35 days for as long as the borrower remained delinquent.  Plaintiffs claimed that these property inspections ordered by Wells Fargo were unnecessary and that their cost should not have been assessed to borrowers.  Plaintiffs also alleged Wells Fargo concealed the true nature of these charges from borrowers by labeling them as "Other Charges" on monthly statements provided to borrowers.

The parties have vigorously litigated this matter for seven years.  They engaged in extensive motion practice, including a motion to transfer venue, a motion to dismiss, several discovery motions, and extensive briefing on class certification before this Court and the Eighth Circuit.  The parties also engaged in substantial discovery.  Defendants produced over 40,000 pages of documents and produced 13.5 gigabytes of loan level data with respect to Class members.  Plaintiffs' Counsel also subpoenaed numerous non-parties, including Wells Fargo's property inspection vendors and Lender Processing Services, Inc. ("LPS"), which owned the "Fidelity" LPS system utilized by Wells Fargo to service mortgage loans.[2]  Plaintiffs' Counsel also took or defended a total of 12 depositions, and retained and worked with numerous experts with respect to mortgage loan servicing and data analysis.  These efforts informed Plaintiffs' decision to enter into the Settlement.

## III.    SETTLEMENT NEGOTIATIONS

As discovery neared its end, the parties retained Hon. Arthur J. Boylan (Ret.), a well-respected mediator, to assist them in determining whether a resolution of the action was possible.

---

[2] LPS has since been renamed Black Knight Financial Services.

The parties participated in a full-day mediation on February 17, 2015. In anticipation of the mediation, each side prepared a detailed mediation statement for Judge Boylan's review. Although an agreement in principle to settle the action was reached on February 17, 2015, and a memorandum of underdstanding was executed, due to the complexity of the issues, months of additional negotiation followed, including a second session with Judge Boylan on May 15, 2015, regarding the terms of the Stipulation, which was executed on August 21, 2015.

## IV.    SUMMARY OF THE PROPOSED SETTLEMENT

As set forth in the Stipulation, Wells Fargo has agreed to deposit $25,750,000 in cash to resolve this action. Plaintiffs' principal reason for entering into this Settlement is the substantial and immediate benefit provided for the Settlement Class, considered against the significant risk that a smaller recovery – or, indeed, no recovery – might be achieved after continued litigation and a trial of the action, a process that could last many months, or even years with appeals.

The Settlement proceeds will be distributed to Class members in accordance with the Plan of Allocation ("POA"), which seeks to equitably distribute the Settlement proceeds to Class Members who have suffered an economic loss as a proximate result of Defendants' alleged wrongdoing. The POA generally estimates the amount of loss that a Class Member could claim for purposes of making pro-rata distributions from the Net Settlement Fund ("Recognized Claims"). Each eligible Class Member shall be allocated a pro rata share of the Net Settlement Fund based on his or her Recognized Claim compared to the total Recognized Claims of all Class Members.

During the litigation, Wells Fargo produced to Plaintiffs loan level data reflecting assessments, waivers, and certain payments and credits of Inspection Fees and other charges with respect to more than 2.7 million mortgage loans of potential Class Members. These loans were

categorized as (A) Active – *i.e.*, loans with an unpaid principal balance greater than zero; (B) Paid-In-Full – *i.e.*, loans that were paid in full by the borrower; or (C) Post-Sale – *i.e.*, loans with respect to which there had been a foreclosure sale, short sale, deed-in-lieu, or charge-off.  In addition, property inspection fees were coded by Wells Fargo as either (A) "Fee Code 4" – *i.e.*, which generally corresponds to inspection fees charged to loans in delinquency status; or (B) "corporate advance" – *i.e.*, which generally corresponds to inspection fees charged to loans that were in foreclosure status.

The formula for calculating Recognized Loss for loans in each of these categories is as follows:

A.   **For Active Loans**, the Recognized Claim is the sum of (i) all subsequent[3] Fee Code 4 inspection fees assessed, plus (ii) 50% of all subsequent corporate advance inspection fees assessed, plus (iii) 10% of all initial Fee Code 4 and initial corporate advance inspection fees assessed, less any credits or waivers of such fees, to the extent such assessments, credits or waivers may be determined from the loan level data produced by Wells Fargo.[4]

B.   **For Paid-In-Full Loans**, the Recognized Claim is the sum of (i) all subsequent Fee Code 4 inspection fees paid, plus (ii) 50% of all subsequent corporate advance inspection fees paid, plus (iii) 10% of all initial Fee Code 4 and initial corporate advance inspection fees paid, to the extent such payments, credits or waivers may be determined from the loan level data produced by Wells Fargo.

---

[3] An inspection is deemed to be an "initial" inspection if no other inspection was assessed within the preceding sixty (60) calendar days.  An inspection within sixty (60) calendar days of a prior inspection is deemed a "subsequent" inspection.

[4] These percentages reflect Plaintiffs' Counsel's assessment of the risk Plaintiffs faced in prevailing on their claims that Wells Fargo's assessment of inspection fees was unlawful.  It is Plaintiffs' Counsel's view that this risk arguably varied depending upon whether the inspection was an initial or subsequent inspection and whether the loan in question had reached foreclosure status.

> C.   **For Post-Sale Loans**, the Recognized Claim will be based on submission of an approved claim form and will be the sum of (i) all subsequent Fee Code 4 inspection fees paid, plus (ii) 50% of all subsequent corporate advance inspection fees paid, plus (iii) 10% of all initial Fee Code 4 and initial corporate advance inspection fees paid.

Class Members who fall within the "Active" and "Paid-in-Full" categories will automatically receive a distribution from the Net Settlement Fund after the Settlement becomes final, because their Recognized Claim will be calculated using Wells Fargo's records.  However, due to the available information with respect to such loans, Class Members who fall within the "Post-Sale" category must timely complete a Proof of Claim form and provide documentary proof of payment of the property inspection charges claimed.  Class Members in the Post-Sale category will have the option of completing their claim forms on the settlement website or submitting a paper copy of their claim.

The POA will be explained fully in the Notice available on the settlement website at www.WellsFargoPropertyInspectionSettlement.com.  Plaintiffs will seek the Court's approval of the POA in conjunction with their motion for Final Approval of the Settlement.

## V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so that notice of its terms can be provided to the Settlement Class, defined as follows:

> All persons who have or had a mortgage serviced by Wells Fargo and owe or paid a property inspection fee between August 1, 2004 and December 31, 2013 (the "Class Period").

The Settlement Class does not include Defendants, any entity in which a Defendant has a controlling interest or is a parent or subsidiary of, or any entity that is controlled by a Defendant,

and any of Defendants' officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns.  The Settlement Class also excludes all those who submit a timely and valid request for exclusion in accordance with the requirements set forth in the Notice.  *See* Stipulation ¶3.06.[5]

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).   "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."  *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn.1993) (approving settlement); Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

"Approval of a class action settlement . . . is a two-step process; first, the Court must enter a preliminary approval order, and second, after providing notice of the proposed settlement to the class and a final fairness hearing is conducted, the Court must enter a final approval order."  *Dryer v. Nat'l Football League*, No. 09-2182, 2013 WL 1408351, at *1 (D. Minn. Apr. 8, 2013) (granting preliminary approval).  Preliminary approval requires only a threshold finding that a settlement falls within the range of possible approval.  *See Hartley v. Suburban Radiologic Consultants, Ltd.*, No. 11-2664, 2014 WL 1775692, at *1 (D. Minn. May 5, 2014) (granting preliminary approval where the settlement terms were "within the range of possible approval as being fair, reasonable, and adequate.").  Once the settlement is found to be "within the range of possible approval" at a preliminary fairness hearing, the final approval hearing is scheduled and notice is provided to the class.  *See White v. Nat'l Football League*, 836 F. Supp. 1458, 1468 (D.

---

[5] This Court previously granted Plaintiffs' motion for class certification and certified a RICO Damages Class, a California UCL Class, and an Injunctive Relief Class.  *See Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 335 (S.D. Iowa 2013).  The proposed Settlement Class encompasses each of these Classes previously certified by the Court.

Minn. 1993).

The Court analyzes "four factors in determining whether a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). However, only the first three are analyzed at the preliminary approval stage. *See Dryer*, 2013 WL 1408351, at *1 ("The last of these factors is analyzed at the final approval stage, following class notification."). "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is [the first factor.]" *Id.* (citation omitted).[6]

Further, courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel. *See In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-MD-2247, 2012 WL 2512750, at *7 (D. Minn. June 29, 2012). Here, after seven years of litigation, the Settlement was negotiated at arm's length by counsel well informed of the issues, and who possess extensive experience in complex litigation. Moreover, the Settlement was achieved under the auspices of the Hon. Arthur J. Boylan (Ret.), one of the most respected mediators in the country. The use of a mediator in settlement negotiations further supports the presumption of fairness and the conclusion that the Settlement achieved here was free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, a preview of the factors considered in granting final approval of class

---

[6] Unless otherwise noted, internal citations are omitted.

action settlements demonstrates that the Settlement is well "within the range of possible approval," and that preliminary approval should be granted.

A.     **The Merits of Plaintiffs' Case Weighed Against the Terms of the Settlement Justify Preliminary Approval of the Settlement**

"The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) (affirming approval). However, the Court "cannot be expected to balance the scales with the nicety of an apothecary. The very object of compromise 'is to avoid the determination of sharply contested and dubious issues.'" *White*, 822 F. Supp. at 1417.  In analyzing a settlement, courts need not "go beyond an amalgam of delicate balancing, gross approximation, and rough justice." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-1958, 2013 WL 716088, at *7 (D. Minn. Feb. 27, 2013).

The Settlement Agreement offers substantial benefits to Class Members, to wit, a $25,750,000 fund that will be used to cover the costs of notice and administration and make awards to Class Members that reflect the relative strength of Class Members' claims. Significantly, this recovery is a significant percentage of recoverable damages. *See Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1080 (D. Minn. 2009) (approving settlement and holding that a $17 million settlement was fair, reasonable and adequate when claimed maximum damages ranged from $94 to $105 million).  Based on their analysis of the discovery taken and the legal basis for the claims asserted, Plaintiffs believed that their strongest claims related to subsequent Inspection Fees that had been paid by all Loan Categories or were still reflected on Wells Fargo's books as owed by borrowers with Active Loans.  Based on their expert's preliminary analysis of the loan level data produced by Wells Fargo, Plaintiffs estimated that the amount of such fees ranged from $100 million to $115 million.  And, of course, Wells

Fargo claimed that these numbers were much lower.

Thus, the benefit of the proposed Settlement, when balanced against the risk that no recovery or a lesser recovery might be achieved after continued litigation or trial, weighs in favor of granting preliminary approval.  *See Zurn*, 2013 WL 716088, at *7 ("The quality of settlement terms from class members' perspective, weighed against the capricious uncertainty, extensive time, and costs inherent in complex trial litigation, merits approval of this settlement.").  As will be set forth in further detail prior to the Final Approval Hearing and as summarized below, Plaintiffs' decision to enter into the Settlement was based on their thorough understanding of the strengths and weaknesses of their claims against Defendants after seven years of litigation that included substantial motion practice and near complete discovery with respect to the merits of Plaintiffs' claims.

### B.       The Defendants' Financial Condition Is a Neutral Factor

Here, the financial condition of the Defendants is neutral because Wells Fargo is financially able to pay the Settlement.  It is also financially able to continue to litigate.  *See Dryer*, 2013 WL 1408351, at *2 (ability to pay is "not at issue" when a defendant has the ability to pay any judgment).

### C.       There Are Significant Risks, Complexity, and Expense Inherent In Continued Prosecution of the Case Against Defendants

"The complexity and expense of class action litigation is well-recognized." *Zurn*, 2013 WL 716088, at *7 (citing *Schmidt v. Fuller Brush Co*., 527 F.2d 532, 535 (8th Cir. 1975) ("[C]lass actions place an enormous burden of costs and expense upon the parties ...")).  Here, further litigation would include, at a minimum, expensive expert discovery as well as competing summary judgment motions, a trial, and appeals, all of which would be risky and expensive.  Barring settlement, this case would "likely drag on for years, require the expenditure of millions

of dollars, all the while class members would receive nothing." *In re Wireless*, 396 F.3d at 933. The nature of the litigation to date and the certainty of continued complex and expensive proceedings counsels in favor of preliminary approval.

Moreover, the outcome of this litigation was far from certain. Throughout the litigation, Wells Fargo strenuously argued that the challenged property inspections complied with the law, applicable GSE and investor guidelines, and were reasonably necessary to protect Wells Fargo's interests or the interests of investors. In addition, Wells Fargo argued that the risk of neglect and property damage is significantly greater for properties with delinquent mortgages, especially those that had fallen into foreclosure status, and that it was at risk for lawsuits, sanctions and fines if it did not inspect properties frequently enough and they fell into disrepair. *See*, *e.g.*, ECF No. 156-15 at ¶¶23, 25. Further, Wells Fargo argued that it was not incentivized to order unnecessary inspections because, unlike other mortgage servicers, it did not mark up the amount charged for a property inspection and, in fact, lost millions of dollars each year on property inspection fees that were not paid by borrowers. *Id*. at ¶¶38-39. While Plaintiffs believe that the evidence showed that Wells Fargo's policies and procedures for ordering inspections resulted in substantial numbers of unnecessary inspections that imposed a significant cost on Class Members, that the numbers of inspections ordered exceeded relevant guidelines and that the vast majority of the inspections were not necessary to protect Wells Fargo's or investors' interests, they recognized that Wells Fargo's arguments to the contrary were not frivolous and might have persuaded a jury otherwise.

Further, Plaintiffs recognized that there were substantial risks to maintaining class certification through trial. Although this Court granted Plaintiffs' motion for class certification and the Eighth Circuit denied Defendants' attempt to take an interlocutory appeal of that

decision, Plaintiffs were cognizant that this Court was free to re-examine this decision at any time.  *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

Finally, the risks of establishing damages were not insignificant.  For example, although loans as to which there had been a foreclosure sale, short sale or deed-in-lieu accounted for more than half of the property inspection fees assessed during the relevant period, Wells Fargo maintained that only a fraction of these amounts were paid by borrowers as opposed to investors or the GSEs, if they were paid at all.  In addition, Wells Fargo maintained that borrowers who had signed loan modification agreements agreeing to pay principal balances that included capitalized property inspection fees had relinquished any claim in this case that such fees were unlawful.  *See Anselmo v. Manufacturers Life Ins. Co.*, 771 F.2d 417, 420 (8th Cir. 1985) ("[A] valid fraud claim is relinquished when the victim of the fraud enters into a subsequent agreement with the perpetrator concerning the same subject matter."); *Grady v. Ocwen Loan Servicing, LLC*, No. 11-1531, 2014 WL 231952 (N.D. Ill. Jan. 21, 2014) (Borrower's claim that servicer had charged "improper fees" not legally due under the mortgage is precluded by her agreement to a loan modification in which she affirmed the debt.).  Moreover, the expert analysis required of the more than 13.5 gigabytes of loan level data produced by Defendants necessary to establish damages promised to be protracted and expensive.

The proposed Settlement eliminates all of these significant risks and provides an immediate benefit to Class Members.  *See Zilhaver*, 646 F. Supp. 2d at 1080 (approving settlement and finding that, "[t]rial of this case would have been lengthy, complex, and costly . . . Even if plaintiffs had received a trial verdict, appeals were a virtual certainty.  Settlement represents a speedy and effective way for the parties to resolve their dispute. . . . Under the

proposed settlement, plaintiffs are assured a recovery.").  Plaintiffs respectfully submit that preliminary approval is appropriate to avoid all of the foregoing uncertainties of continued litigation and in light of the significant relief afforded to Class Members.

## VI.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES PURSUANT TO FED. R. CIV. P. 23

In reviewing the Parties' proposed Settlement, the Court should certify the proposed Settlement Class for purposes of settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The Parties have stipulated to certification of the proposed Settlement Class for purposes of settlement only.  "The requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of litigation." *White*, 822 F. Supp. at 1402.  The proposed Settlement Class should be preliminarily certified for all of the same reasons described in this Court's prior opinion granting Plaintiffs' motion for class certification.

### A.  The Proposed Settlement Class Meets All of the Prerequisites of Fed. R. Civ. P. 23(a)

The proposed Settlement Class easily meets each of the prerequisites of Fed. R. Civ. P. 23(a).

**Numerosity:**  Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1). This requirement is easily satisfied here, as the proposed Settlement Class is composed of more than 2.7 million persons.

**Commonality:**  "Rule 23(a)(2) requires that there be common questions of law or fact among the members of the class."  *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982).  As this Court previously found, the commonality requirement is satisfied here because

14

"this case . . . involves an allegation concerning a policy that was applied uniformly to all class members" and "the common question of whether this policy constitutes a RICO and/or a UCL violation is certainly amenable to a common answer, which will drive the resolution of this litigation." *Huyer*, 295 F.R.D. at 339.

**Typicality:**   Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  As this Court has observed, "[t]he burden of showing typicality is 'fairly easily met so long as other class members have claims similar to the named plaintiff['s].'"   *Huyer*, 295 F.R.D. at 339, quoting *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).   "A named plaintiff's claim is typical 'if the claims . . . of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.'"   *Huyer*, 295 F.R.D. at 339, quoting *Paxton*, 688 F.2d at 561.  As this Court found in granting Plaintiffs' motion for class certification, "the named Plaintiffs' claims are typical of the class claims because the class members' grievances are virtually identical with those of the named Plaintiffs' – they all contend that they have been the victims of the exact same policy that is at issue in this lawsuit."  *Huyer*, 295 F.R.D. at 339 n.9; *see also Golan v. Veritas Entertainment, LLC*, 788 F.3d 814, 821 (8th Cir. 2015) (finding proposed class representatives typical because "the purpose of the [allegedly unlawful] calls is the critical issue in this case.").

**Adequacy:**   The requirement of adequacy is satisfied when "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).   Two factors are relevant to this inquiry:  (1) whether the interests of the representative plaintiffs are antagonistic to the interests of others in the class; and (2) whether the named representatives and their counsel are willing and competent to pursue the litigation.  *See, e.g.*, *Hervey v. City of Little*

*Rock*, 787 F.2d 1223, 1230 (8th Cir. 1986); *Paxton*, 688 F.2d at 562-63.  The first factor – that there be no conflict of interest – requires only that "the representatives must not have antagonistic or conflicting interests with the unnamed members of the class."  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *see also Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.*, 213 F.R.D. 537, 544 (W.D. Mo. 2002), *aff'd*, 339 F.3d 1001 (8th Cir. 2003).  Here, Plaintiffs have been injured by the same course of conduct that allegedly injured all other members of the proposed Settlement Class, and have vigorously prosecuted this action for seven years, including involvement in discovery efforts.  Further, Plaintiffs have retained counsel with substantial expertise in complex class action litigation.

### B.    The Proposed Settlement Class Satisfies the Prerequisites of Fed. R. Civ. P. 23(b)(3)

As this Court previously instructed, "Rule 23(b)(3) requires that common questions of law or fact 'predominate over any questions affecting only individual members' and that resolving the matter as a class action be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"  *Huyer*, 295 F.R.D. at 346.  However, "[w]hen a class is being certified for settlement, the Court need only analyze the predominance of common questions of law and the superiority of class action for fairly and effectively resolving the controversy; it need not examine Rule 23(b)(3)(A-D) manageability issues, because it will not be managing a class action trial."  *Uponor*, 2012 WL 2512750, at *5.

"The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member."  *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013).  Here, as this Court previously found, common questions concerning whether Wells Fargo's policies and practices for ordering property inspections were unlawful under RICO and California's UCL

predominate.  *See Huyer*, 295 F.R.D. at 348 ("[T]here can be little doubt that whether the challenged policy constitutes a RICO and/or a UCL violation can be established by common evidence and requires no examination of the individual circumstances of each class member."). Therefore, the Settlement Class fulfills Rule 23(b)(3)'s predominance requirement.

The superiority requirement is also easily satisfied.  Here, the alternative mechanism to adjudicate the claims in this action would be individual claims for relatively small amounts of damages.  This would not only burden the court system that would be deciding the same legal issues in a number of small cases, but would also not make economic sense for litigants or lawyers.  It is likely that in many, if not most, individual cases, litigation costs would dwarf potential recovery.  *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 675 (S.D. Fla. 2012). There also is no reason to believe that prosecution of Class Members' claims in a single action will create more management problems than would thousands of individual lawsuits.  *Id.*

In light of the foregoing, all of the requirements of Rules 23(a) and (b) are satisfied, and there are no issues that would prevent the Court from certifying this Settlement Class for settlement purposes, reaffirming the appointment of Plaintiffs as Class representatives, and reaffirming the appointment of Scott+Scott, Attorneys at Law, LLP and Reese LLP as Co-Lead Class Counsel.

## VII.   THE COURT SHOULD APPROVE THE FORM AND CONTENT OF THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS

Rule 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1).  In addition, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Notice

17

should be "written in plain English and [should be] readily understandable by Class Members." *In re Lutheran Bhd. Variable Ins. Products Co. Sales Practices Litig.*, No. 99-1309, 2004 WL 2931352, at *10 (D. Minn. Dec. 16, 2004).

Here, direct mail notice will be disseminated to all persons Wells Fargo has identified as potential Class Members at their last known addresses based upon servicing records it keeps in the ordinary course of its business.[7]  This Postcard Notice will contain a summary of the action and the Settlement and will inform Class Members (i) whether they will receive an automatic payment or must file a claim to participate; (ii) of their right to object to the proposed Settlement and the date by which they must do so; (iii) of their right to exclude themselves if they do not want to be bound by the proposed Settlement and the date by which they must do so; and (iv) that any judgment, whether favorable or not, will bind all Class Members who do not request exclusion.  It will also direct recipients to a dedicated Settlement Website where additional information with respect to the action will be posted, including a more detailed long-form notice. "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."  *In re Advanced Battery Technologies, Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (collecting cases).

Plaintiffs further propose to supplement direct mail Notice with the Summary Notice which will be published once in the national edition of the *Wall Street Journal,* and once over the *PR Newswire,* within ten (10) calendar days after the mailing of the Postcard Notice.  A copy of the Stipulation and the Proof of Claim form (for those Class Members required to file claims) will also be posted on the Settlement Website along with Plaintiffs' brief and supporting declaration in support of Final Approval of the Settlement and Plaintiffs' Counsel's application

---

[7] These addresses will be updated before mailing, if necessary, using the United States Postal Service's National Change of Address database.

for an award of attorneys' fees and reimbursement of litigation expenses.

Additionally, Rule 23(h)(1) requires that notice of Plaintiffs' Counsel's motion for attorneys' fees must also be directed to Class Members in a reasonable manner.  Fed. R. Civ. P. 23(h)(1).  Here, the proposed notice satisfies all elements of Rule 23(h)(1), as it notifies the Settlement Class that Plaintiffs' Counsel will apply to the Court for attorneys' fees in an amount of no more than 33-1/3% of the Gross Settlement Fund and Litigation Expenses not to exceed $400,000.

The means by which Class Members will receive notice, by direct mail, publication, a Settlement Website, and live operators, are the best practicable in the circumstances.  Indeed, it is well settled that direct mail notice is the preferred mode of notice.  *See Perrin v. Papa John's Int'l, Inc.*, No. 09-01335, 2011 WL 4815246, at *2 (E.D. Mo. Oct. 11, 2011) (approving notice plan and holding that "[m]ailed notice has traditionally been considered the best vehicle."); *Smith v. Gurstel Chargo, PA*, No. 14-183, 2014 WL 6453772, at *4 (D. Neb. Nov. 17, 2014) ("The form of notice -- individual mailed notice -- is the best practicable under the circumstances."). The addition of a published notice, a website, and live operators renders the proposed notice plan more than adequate.  *See Carpenters & Joiners Welfare Fund, Universal Care Inc. v. SmithKline Beecham Corp*, No. 04-3500, 2008 WL 4435734, at *2 (D. Minn. Sept. 30, 2008) (approving notice plan that "included first-class mail notice . . . , a published notice in two national periodicals . . . , electronic notice through a dedicated website, and a staffed toll-free information line to answer questions.").

## VIII.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a date for the Final Approval Hearing, as well as dates for mailing the Postcard Notice, publishing the

Summary Notice, and deadlines for requesting exclusion from the Settlement Class, objecting to the Settlement, submitting Proof of Claim forms and filing papers in support of the Settlement. Plaintiffs respectfully propose the following schedule:

| Event | Proposed Date/Deadline | Date/Deadline On or After[8] |
|---|---|---|
| Deadline for mailing the Postcard Notice to settlement Class Members ("Notice Date") | 45 calendar days following the Court's entry of the Preliminary Approval Order | November 2, 2015 |
| Deadline for publishing the Summary Notice | 10 calendar days after the Notice Date | November 12, 2015 |
| Deadline for filing papers in support of Final Approval of the Settlement, Plan of Allocation and Plaintiffs' Counsel's application for Attorneys' Fees and Litigation Expenses | 44 calendar days before Final Approval Hearing | December 8, 2015 |
| Deadline for receipt of exclusion requests or objections | 30 days before Final Approval Hearing | December 22, 2015 |
| Deadline for filing reply papers in support of Final Approval of the Settlement, Plan of Allocation and Plaintiffs' Counsel's application for Attorneys' Fees and Litigation Expenses | 14 days before Final Approval Hearing | January 7, 2016 |
| Final Approval Hearing | At least 125 calendar days from entry of the Preliminary Approval Order | January 21, 2016 |
| Deadline for submitting Proof of Claim forms | 135 calendar days after Notice Date | March 16, 2016 |

## VIII.   CONCLUSION

At this juncture, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order which will : (i) preliminarily approve the proposed Settlement; (ii) preliminarily

---

[8] The specific proposed dates are respectfully estimated assuming that the Court enters the proposed Preliminary Approval Order on or about September 18, 2015. In the event that the Court does not enter the proposed Preliminary Approval Order on or before that date, Plaintiffs' Counsel respectfully request that the same separation of dates in the schedule be provided for by the Court.

certify the Settlement Class for settlement purposes only; (iii) permit notice of the terms of the Settlement to be sent to the Settlement Class; and (iv) schedule a date and time for the Final Approval Hearing to consider approval of the Settlement and related matters following an opportunity for Settlement Class Members to express their views concerning the fairness of the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses.   For the reasons discussed herein, Plaintiffs respectfully request that the proposed Settlement be preliminarily approved by the Court and the Preliminary Approval Order entered.

Dated: August 21, 2015

Respectfully submitted,

/s/ Deborah Clark-Weintraub
Deborah Clark-Weintraub
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
\
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York 10174
Telephone: 212-223-6444
Facsimile: 212-223-6334
Email: dweintraub@scott+scott.com

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: 212-643-0500
Facsimile: 212-253-4272
Email: mreese@reesellp.com

*Co-Lead Class Counsel*

**ROXANNE CONLIN & ASSOCIATES**
319 7th Street, Suite 600
Des Moines, IA 50309
Telephone: 515 283 1111
Facsimile: 515 282 0477
Email: roxlaw@aol.com

**STROM LAW FIRM LLC**
2110 Beltline Boulevard, Suite A
Columbia, SC 29204
Telephone: 803-252-4800
Facsimile: 803-252-4801
Email: petestrom@stromlaw.com
Email: mpacella@stromlaw.com

**FINKELSTEIN, BLANKINSHIP,FREI-
PEARSON & GARBER, LLP**
1311 Mamaroneck Avenue, Suite 220
White Plains, NY 10605
Telephone: 914-298-3281
Facsimile: 914-824-1561
Email: tgarber@fbfglaw.com

*Additional Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2015, the foregoing document was filed with the Clerk of the Court via this Court's CM/ECF electronic filing system, and served on all counsel of record registered to receive electronic notice.  Those not registered to receive such notice were served via regular first class mail.

/s/ Deborah Clark-Weintraub
Deborah Clark-Weintraub (*pro hac vice*)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
212-223-6444
Fax: 212-223-6334
Email:  dweintraub@scott-scott.com

*Lead Class Counsel*