# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

### NOTICE OF APPEAL

| | | |
|---|---|---|
| Edward Huyer, et al. | * | 4:08-cv-507 |
| Plaintiff | * | District Court Docket Number |
| | * | |
| | * | |
| Wells Fargo & Co. and Wells Fargo Bank, NA | * | Robert W. Pratt |
| Defendant | * | District Court Judge |

Notice is hereby given that Class Member Rhadiante Van de Voorde appeals to the United States Court of Appeals for the Eighth Circuit from the ☑Judgment ☑Order entered in this action on 02/17/16 .

_____
Signature of Appellant/Cnsl

1217 S.W. Army Post Road
Street Address

Des Moines, IA 50315

_____
Date

City            State     Zip

Marc Harding
Typed/printed Name

515-287-1454
Telephone Number

**Transcript Order Form:** *( To be completed by attorney for appellant )*

Please prepare a transcript of: Fairness Hearing held 1-21-16
(Specify)

I am not ordering a transcript because:_____
(Specify)

### CERTIFICATE OF COMPLIANCE

Appellant hereby certifies that copies of this notice of appeal/transcript order form have been filed/served upon the US District Court, court reporter, and all counsel of record and that satisfactory arrangement for payment of cost of transcripts ordered have been made with the court reporter (FRAP 10(b))

Attorney's Signature _Marc Harding_ Date: 3-10-2016

## NOTE: COMPLETE APPROPRIATE APPEAL SUPPLEMENT FORM

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF IOWA
**OFFICE OF THE CLERK**
**P. O. BOX 9344**
**DES MOINES, IA. 50306-9344**
**515-284-6248**

# Civil Case Notice of Appeal Supplement

COUNSEL FOR APPELLANT PLEASE COMPLETE AND SUBMIT WITH NOTICE OF APPEAL

**Case Name:** Edward Huyer, et al. _____ **vs.** Wells Fargo & Co. and Wells Fargo Ba

**District Court Case #** 4 : 08 - cv - 507

**Appeal Fee ($505.oo) Status**  Pd ☑  IFP ☐  Pending ☐  Govt. Appeal ☐

**Counsel  Appointed** ☐  **CJA** ☐  **Retained** ☑  **Pro Se** ☐

**Appeal filed by  Counsel** ☑ **Pro Se** ☐

**Any reason why counsel should not be appointed** _____

**Pending post Judgment motions:  Yes** ☐ **No** ☑

**Type of Motion(s)** _____

**High Public Interest Case  Yes** ☐  **No** ☑

**Simultaneous Opinion Release Requested  Yes** ☐ **No** ☑

**Trial Held  Yes** ☐ **No** ☑

**Jury Trial Held  Yes** ☐ **No** ☑

**Court Reporter  Yes** ☐ **No** ☑  **Length of Trial** _____

**Reporter's  Name** _____

**Address** _____

_____

**Phone** _____

**Transcript Ordered  Yes** ☐ **No** ☑

**Appealing:  Order prior to final judgment** ☑ **Final Judgment** ☑

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

|  |  |
|---|---|
| EDWARD HUYER, et al., | |
| Plaintiffs, | |
| v. | 4:08-cv-507 |
| WELLS FARGO & CO. and WELLS FARGO BANK, N.A., | |
| Defendants. | |
| | ORDER |

Before the Court are two motions: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement Pursuant to Federal Rule of Civil Procedure 23 (Clerk's No. 262); and (2) Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Awards (Clerk's No. 263). A fairness hearing was held on January 21, 2016. Clerk's No. 288. The matter is fully submitted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This class action was filed in the Northern District of California against Defendants Wells Fargo & Co. and Wells Fargo Bank, N.A. (collectively "Wells Fargo") on August 5, 2008, alleging eight counts including RICO violations, violations of California law, fraud, and unjust enrichment. *See* Compl. (Clerk's No. 1). The claims all relate to Wells Fargo's practice of automatically ordering and charging fees for drive-by property inspections when customers fall behind on their mortgage payments. *Id.* ¶ 2. Wells Fargo made a motion to transfer the case to the Southern District of Iowa, which was granted on December 17, 2008. Clerk's No. 38. The parties engaged in discovery and a motion to certify the class was filed on November 9, 2012.

Clerk's No. 150. That motion was granted on October 23, 2013. Clerk's No. 206. The parties

engaged in settlement negotiations and reached a resolution following mediation with retired

United States Magistrate Judge Arthur Boylan. A preliminary motion to approve the settlement

was filed on August 21, 2015. Clerk's No. 243. The Court granted preliminary approval on

September 2, 2015, and a fairness hearing was held on January 21, 2016. Clerk's Nos. 245, 288.

Attorneys for Plaintiffs and Defendants appeared at the hearing, and the Court also heard from

one class member who objected to the settlement terms. *See* Clerk's No. 288. The settlement is

now ready for final approval.

## II.     LAW AND ANALYSIS

### A.     *Class Certification*

In order to grant final class certification, the Court must find that the requirements of both

Federal Rule of Civil Procedure 23(a) and (b) have been met. Rule 23(a)(1)–(4) requires that:

> (1)     the class is so numerous that joinder of all members is impracticable ["numerosity"];
>
> (2)     there are questions of law or fact common to the class ["commonality"];
>
> (3)     the claims or defenses of the representative party are typical of the claims or defenses of the class ["typicality"]; and
>
> (4)     the representative party will fairly and adequately protect the interests of the class ["adequacy"].

The class consists of individuals who "have or had a mortgage serviced by Wells Fargo

and owe or paid a property inspection fee assessed during the period August 1, 2004 through

December 31, 2013, inclusive." Clerk's No. 245 at 1–2. The numerosity requirement is

satisfied, as the class contains approximately 2.7 million borrowers. *See* Clerk's No. 264 (Decl.

of Clark-Weintraub) ¶ 51. Commonality is satisfied if class members have a common contention

"that is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The essential question is "not the raising of common questions . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotations omitted). This class satisfies the commonality requirement because every class member was charged property inspection fees under the same Wells Fargo policy—the question of the legality of that policy is common to all class members. As to typicality, the party representatives have claims that are typical of the class. There are three categories of class members: (1) those with active loans ("active"); (2) those whose loans are paid-in-full ("paid-in-full"); and (3) those whose loans ended in foreclosure ("post-sale"). Clerk's No. 243-3 at 21. The class representatives fall into either the active or paid-in-full categories. Nonetheless, the claims for each of the categories are all based on the same property inspection policy, therefore, the class representatives satisfy the typicality requirement as their claims are similar to those of borrowers in the post-sale category. *See Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) ("The burden [to prove typicality] is fairly easily met so long as other class members have claims similar to the named plaintiff.") (internal quotation omitted). Finally, the class representatives fulfill the adequacy requirement. This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, the class representatives seek the same type of recovery as the rest of the class members, they are represented by qualified counsel and, as discussed below, reached a favorable settlement. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995) (explaining that "[t]he adequacy of class representation . . . is ultimately determined by the settlement itself.") (internal quotation omitted).

3

To certify a class for settlement, the class must also meet the two requirements listed in

Fed. R. Civ. P. 23(b)(3): (1) "questions of law or fact common to class members predominate

over any questions affecting only individual members"; and (2) "a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy." These

requirements are fulfilled in this case. The Court has not been presented with any evidence that

legal questions exist in relation to the property inspections that pertain only to individual class

members, and not to the class as a whole. In addition, the massive size of the class convinces the

Court that a class action is the most efficient and fair way to resolve this case.

Accordingly, the Court certifies the class for settlement purposes. In addition, the Court

certifies, solely for the purpose of effectuating the settlement and for no other purpose, Plaintiffs

Connie Huyer, Edward R. Huyer, Jr., Carlos Castro, and Hazel P. Navas-Castro as

representatives of the class, and appoints the law firms of Scott+Scott, Attorneys at Law, LLP

and Reese LLP as co-lead class counsel.

B.      *Sufficiency of Notice*

Notice of a class action settlement must be reasonable and satisfy due process for the

potential class members. Fed. R. Civ. P. 23(e), *DeBoer*, 64 F.3d at 1176. "The Supreme Court

has found that the notice must be 'reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their

objections.'" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Mullane

v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The notice must be the "best

notice practicable under the circumstances, including individual notice to all members who can

be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

4

Here, a Claims Administrator was appointed who became responsible for, among other things, the notice process. Clerk's No. 243-3 at 15. The potential pool of class members was identified using mortgage servicing records kept by Wells Fargo. *Id*. Wells Fargo provided a database of those individuals to class counsel, and notice of this action was mailed by postcard to approximately 2.7 million individuals. *See id*. In addition, the Claims Administrator published notice of the class action in the Wall Street Journal and other various business publications. *Id*. Finally, a settlement website was established that included all of the relevant notice information, as well as contact information for the class members to seek assistance with their claims on a toll-free line. *Id*. Class members were given 60 days from the date of the mailing to opt-out of the lawsuit, and 140 days to submit claims. Clerk's No. 245 ¶¶ 5, 9(a), 10, 11. The Court finds that the notice provided here complies with Rule 23, and comports with due process.

C.     *Evaluation of Settlement*

The settlement agreement provides that Wells Fargo shall pay $25,750,000 in full settlement of all class claims (the "settlement fund"). Clerk's No. 243-3 at 17–18. That amount includes $3,250,000 towards the cost of providing notice and administering the settlement. *Id*. at 18. Awards of attorney fees and incentive payments to named Plaintiffs will also be disseminated from the settlement fund, as discussed further below. *Id*. Class members will be compensated with the amount remaining in the settlement fund. Those class members with active or paid-in-full loans are not required to submit a claim to receive a distribution; those awards will be paid automatically by the Claims Administrator upon this Court's final approval of the settlement. *Id*. at 21. Post-sale class members are required to submit proof of their claims by March 16, 2016; specifically, those class member are required to provide paperwork showing that they paid the inspection fees in question during the relevant time period. *Id*. at 23. Under

5

the Plan of Allocation ("POA"), each active, paid-in-full, and post-sale class member with an

approved claim, will be allocated a pro rata share of the settlement fund based on the amount of

the individual's claim in comparison with the total recognized claims of all class members. *Id.* at

24. A second round of distribution shall occur six months later, with any funds remaining to be

distributed pro rata to those class members who cashed their first settlement check. *Id.* at 26.

Any funds that remain six months later shall be donated to the United Way to be used for

financial education classes. *Id.* Class counsel predicts that the amount remaining will be

negligible. Tr. at 26.[1] Under no circumstances shall any of the settlement fund be returned to

Wells Fargo. Clerk's No. 243-3 at 20.

　　　The Court must determine whether the settlement agreement is "fair, reasonable, and

adequate." Fed. R. Civ. P. 23(e)(2). Settlement agreements are generally encouraged, and are

presumptively valid. *In re Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013). This is

particularly so in this case, where the parties settled the case with the aid of an experienced

mediator, retired United States Magistrate Judge Arthur Boylan. There are four factors the Court

considers in determining whether final approval of a settlement should be granted: (1) the merits

of the plaintiffs' case weighed against the terms of the settlement; (2) the defendants' financial

condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition

to the settlement. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

　　　1. *The merits of the Plaintiffs' case weighed against the settlement terms.*

　　　This factor weighs in favor of settlement. First, the amount of the settlement fund was

favorable to the class. Although class counsel originally predicted that class members paid

---

[1]　　　Citations to the transcript are to a rough draft of the January 21, 2016 fairness hearing
transcript provided to the Court by the court reporter.

around $100–$115 million dollars in unlawful property-inspection fees (Tr. at 21), Wells Fargo

has a number of compelling arguments for why that estimate is too high.  For example, some

class members had signed loan modification agreements that rolled all outstanding fees into the

principal balance of their loans; Wells Fargo argues that the modification agreements released

any claims related to those fees.  In addition, Wells Fargo argues strenuously that the property

inspections ordered, particularly for homes that had entered foreclosure, were necessary to

protect its interests as a lender and, therefore, not unlawful.  Clerk's No. 158-14 ¶¶ 23, 25.  Wells

Fargo also argues that it actually lost millions of dollars in unpaid property-inspection fees each

year and was not motivated to order unnecessary inspections.  *Id*. ¶¶ 38-39.

Second, the strength of the Plaintiffs' legal claims is in question.  Class counsel indicated

at the fairness hearing that this was one of the first property-inspection-fee class actions to be

filed nationwide.  Tr. at 16.  Since the date of filing, similar RICO claims in other class actions

against major mortgage providers have been dismissed based on findings that the lenders did not

share a common purpose with the property-inspection vendors. *See, e.g., Cirino v. Bank of Am.,*

*N.A.,* No. 13-cv-8829, 2015 WL 3669078, at **3–5 (C.D. Cal. Feb. 10, 2015); *Stitt v. Citibank,*

*N.A.,* No. 12-cv-03892, 2015 WL 75237, at **4–7 (N.D. Cal. Jan. 6, 2015); *Ellis v. J.P. Morgan*

*Chase & Co.,* No. 12-cv-03897, 2015 WL 78190, at **4–7 (N.D. Cal. Jan. 6, 2015).  In addition,

as explained above, Wells Fargo had credible defenses that could be accepted by a fact-finder;

Plaintiffs' ability to recover by proceeding to trial was not inevitable.  The settlement fund

ensures that class members will receive an adequate percentage of their damages and mitigates

the risk inherent in taking these legal claims to trial.  Thus, this factor weighs strongly in favor of

approving the settlement and finding it to be fair and reasonable.

2. *The defendant's financial condition.*

Wells Fargo is financially able to pay the settlement amount, or continue with the litigation in the event the settlement is not approved. As such, this factor is neutral. *See Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (petition for certiorari filed Nov. 16, 2015, 15-645) (finding that this factor was neutral where the defendant was in good financial standing and was able to pay a settlement or continue with litigation).

3. *The complexity and expense of further litigation.*

Proceeding to trial would be costly and, as discussed above, the class would face numerous risks. Extensive additional discovery would be likely, as Wells Fargo has produced more than thirteen gigabytes of loan data that would require further analysis by Plaintiffs' experts at significant expense. At the fairness hearing, class counsel estimated that a trial would last ten days to two weeks, and highlighted the difficulty of presenting complex financial data to lay jurors. Tr. at 33–34. This factor weighs in favor of approving the settlement.

4. *The amount of opposition to the settlement.*

Finally, Plaintiffs argue that the extremely low rate of objections by class members demonstrates overwhelming support for the settlement agreement. Out of a class of 2.7 million individuals, there were only 219 requests for exclusion from the settlement, and 13 objections. Clerk's No. 285-4 (Declaration of Claims Administrator). However, the Court recognizes that class-member silence does not always equate to support for the settlement; class members may lack the time, resources, or information necessary to lodge an objection. *See Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001). Therefore, the fact that few objections were received weighs little in the Court's overall analysis of the settlement agreement.

The objections received fell into five main categories: (1) the treatment of post-sale class members; (2) the release of legal claims associated with the settlement; (3) the amount of the settlement fund; (4) the adequacy of the notice provided; and (5) the amount of attorney fees to be paid out of the settlement fund.[2]   The Court finds the objections to be without merit. Objectors first expressed concern about the fairness of requiring post-sale class members to provide documentation of their claims, while active or paid-in-full class members receive their awards automatically.   The Court is aware that an onerous claims process may offset the benefits of an excellent settlement result.   But here, there are valid reasons for requiring post-sale class members to provide actual proof of their claim.   As explained at the fairness hearing, in a foreclosure situation, property-inspection fees are often paid by a third-party vendor, if they are paid at all.   Tr. at 13.   Due to the way foreclosures are processed, the data Wells Fargo possesses with regard to the payment of inspection fees on foreclosed properties is limited.   *Id.* at 23. Furthermore, one of Wells Fargo's defenses—that the ordered property inspections were necessary to protect its interests as a lender—was most applicable to those loans that had entered foreclosure.   For all those reasons, the Court finds the proof requirement for post-sale class members to be reasonable.   Next, the Court received objections regarding the scope of legal claims that must be released by the class members to participate in the settlement.   The Court has reviewed the release, and finds it to be properly tailored with respect to the legal claims in this case.   The release is only applicable to claims "arising out of, or relating to, in any way, property

---

[2]     The Court notes Plaintiffs' argument that some objections were received from "serial objectors," and thus should be given less weight. *See* Clerk's No. 285 at 5 (citing *In re Uponor, Inc.*, No. 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *5 (D. Minn. Sept. 11, 2012)). However, a review of all the objections received shows that the objections from the serial objectors were similar to those received from other class members, so the Court does not distinguish them here.

inspection fees assessed on a mortgage serviced by Wells Fargo . . . during the Class Period."
Clerk's No. 243-3 at 9. Accordingly, the release is not overly broad. The Court also received
objections related to the notice provided to the class members and the amount of the settlement
fund. For the reasons discussed above in sections II.B and II.C.1, the Court has concluded that
notice was sufficient and that the amount of the settlement is fair and reasonable. Finally,
objections were received with regard to the amount of attorney fees requested by class counsel.
For the reasons discussed below in section II.D, the Court finds an award of 33 1/3% of the
settlement fund to be reasonable under the circumstances of this case. Accordingly, the
objections received are all overruled. All class members who have not made objections to the
settlement in the manner provided by the written notice are hereby deemed to have waived any
objections by appeal, collateral attack, or otherwise.

        The Court also notes that a list of the 219 class members who have filed requests to opt-
out of the class are attached hereto as Exhibit 1. The Court hereby grants the requests of all
those individuals to opt-out of the settlement, including those who filed untimely requests for
exclusion. All other class members are bound by the terms and conditions of the settlement.

    5. *The settlement is fair and reasonable and in the best interests of the class.*

        In total, two factors weigh in favor of approving the settlement (the merits of the
Plaintiffs' case weighed against the settlement terms and the complexity and expense of
continued litigation) and two are neutral (the Defendants' ability to pay and the amount of
opposition to the settlement by the class). The Court concludes that the agreement is fair and
reasonable and represents an excellent compromise between the uncertainty of future litigation
and the substantial benefits of settlement.

D.    *Attorney Fees*

Rule 23(h) of the Federal Rules of Civil Procedure provides that: "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." In the Eighth Circuit, there are two main approaches to analyzing a request for attorney fees—the lodestar method and the percentage-of-the-fund method. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244–45 (8th Cir. 1996). Under the percentage-of-the-fund method, fees are calculated as a fraction of the settlement fund the attorneys negotiated. *Id.* "It is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common fund settlement[.]" *Petrovic*, 200 F.3d at 1157. The Eighth Circuit has not established factors that a district court must consider when awarding fees under the percentage-of-the-fund method, however, some cases have relied on the twelve-factor test from *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719–20 (5th Cir. 1974). *See In re Xcel Energy, Inc. Litig.*, 364 F. Supp. 2d 980, 993 (D. Minn. 2005). Not all of the factors apply in every case, and the Court has broad discretion to determine which factors are relevant and the weight to assign those factors. *Id.* The relevant Johnson factors in this case include:  (1) the time and work required; (2) the preclusion of other employment by the attorney due to acceptance of this case; (3) the contingent nature of the fee; (4) the results obtained; and (5) the experience, reputation, and ability of the attorneys. *See Johnson*, 488 F.2d at 719–20.

Class counsel requests 33 1/3% of the total settlement fund ($8,583,332.48) for their work on behalf of the class. Clerk's No. 285 at 4. The award includes fees for co-lead counsel as well as several other attorneys and law firms that worked on behalf of the class. Class counsel

11

also requests an award of litigation expenses totaling $211,042.23. Clerk's No. 292 at 2–3. The requested fees and expenses were identified in the notice provided to all potential class members.

The Court finds an award of 33 1/3% of the settlement fund to be in line with other awards in the Eighth Circuit; it is also reasonable and fair given the circumstances of this case. *See, e.g., In re U.S. Bancorp Litigation*, 291 F.3d 1035, 1038 (8th Cir. 2002) (concluding that a district court's attorney fee award of 36% of a class action settlement fund was not an abuse of discretion); *Yarrington v. Solvay Pharmaceuticals, Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010) (finding that an award of 36% of a class action settlement fund was "in line with the range of fees approved by the Eighth Circuit"). This case has been ongoing since 2008 and has included extensive motion practice, discovery, and settlement negotiations. Furthermore, all of the attorneys worked on a contingent basis, and most attorneys retained on behalf of the class have relevant experience in class action litigation. The Court was also able to conduct a lodestar cross-check on the fee award. *See Yarrington*, 697 F. Supp. 2d at 1061 ("[C]ourts applying the percentage-of-the-fund method will often verify the reasonableness of an attorney fee award by crosschecking it against the lodestar method."). Class counsel documented over 7,000 hours on the case, which represented a collective lodestar of $4,715,940.25. Clerk's No. 285. Thus, an award of $8.5 million represents a lodestar multiplier of 1.82, which the Court finds reasonable in recognition of the protracted nature of the litigation. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 103, 123 (2d Cir. 2005) (finding a multiplier of 3.5 appropriate in a class action that was litigated for seven years).

In conclusion, the Court grants Plaintiffs' motion for an award of attorney fees in the amount of 33 1/3% of the settlement fund. In addition, the Court grants an award of $211,042.23 in litigation expenses.

E.    *Incentive Payments*

Finally, class counsel requests an award of $10,000 for each of the named Plaintiffs in this case, to be disseminated from the settlement fund. Each of the named Plaintiffs were deposed, participated in discovery, and maintained contact with class counsel over the course of this multi-year litigation. Accordingly, the Court finds that an award of $10,000 per named Plaintiff is appropriate.

III.   CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Final Approval of Class Action Settlement (Clerk's No. 262) and Plaintiffs' Motion for Attorney Fees, Costs, and Class Representative Awards (Clerk's No. 263) are GRANTED pursuant to the following:

(1)   The Stipulation (Clerk's No. 243-3) and the Settlement embodied therein are approved as final, fair, reasonable and adequate. The Settlement shall be consummated in accordance with the terms and provisions of the Stipulation.

(2)   The Action and all claims that are or have ever been contained therein, as well as all of the Released Claims, are dismissed with prejudice as to the Plaintiffs, the Class Members, and all other Releasing Parties. The Parties are to bear their own costs, except as otherwise provided in the Stipulation.

(3)   All Released Defendants as defined in the Stipulation are released in accordance with, and as defined in, the Stipulation.

(4)   Upon the Effective Date of this Settlement, Plaintiffs and all Class Members, on behalf of themselves and each of the Releasing Parties shall be deemed to have, and by operation of this Final Judgment shall have fully, finally, and forever waived, released, relinquished, and discharged all Released Claims against the Released Defendants,

13

regardless of whether such Class Member cashes an award check or executes and delivers a Proof of Claim (if required).

(5) Upon the Effective Date of this Settlement, each of the Defendants shall be deemed to have, and by operation of this Final Judgment, shall have fully, finally, and forever released and discharged Plaintiffs, Plaintiffs' Counsel, and each and all of the Class Members from any and all claims relating to the institution, prosecution or settlement of: (i) the Action or (ii) the Released Claims. Nothing in this Final Judgment shall operate or be construed to release any claims or rights Wells Fargo has to recover any past, present or future amounts that may be owed by Plaintiffs, Class Members, or Plaintiffs' Counsel on his/her accounts, loans, or any other debts owed to or serviced by Wells Fargo, pursuant to the terms and conditions of such loans, accounts, or any other debts.

(6) All provisions of the Stipulation are incorporated into this Final Judgment as if fully rewritten herein. To the extent that the terms of this Final Judgment conflict with the terms of the Stipulation, the Stipulation shall control.

(7) Plaintiffs, all Class Members, and all other Releasing Parties are hereby barred and permanently enjoined from instituting, commencing, maintaining, or prosecuting in any court or tribunal any of the Released Claims against any of the Released Defendants.

(8) Defendants and their successors or assigns are hereby barred and permanently enjoined from instituting, commencing, maintaining, or prosecuting any claims relating to the institution, prosecution or settlement of: (a) the Action or (b) the Released Claims against Plaintiffs, Class Members, or Plaintiffs' Counsel.

(9) The Plan of Allocation set forth in the Notice is approved as fair and reasonable, and Plaintiffs' Counsel are directed to arrange for the administration of the Settlement in

14

accordance with its terms and provisions. Any modification or change in the Plan of Allocation that may hereafter be approved shall in no way disturb or affect this Final Judgment or the released provided hereunder and shall be considered separate from this Final Judgment.

(10) The Court hereby decrees that neither the Stipulation nor this Final Judgment nor the fact of the Settlement is an admission or concession by the Released Defendants, or any of them, of any liability or wrongdoing. This Final Judgment is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Neither the Stipulation nor this Final Judgment nor the fact of Settlement nor the settlement proceedings nor the settlement negotiations nor any related documents shall be offered or received in evidence as an admission, concession, presumption, or inference against any of the Released Defendants in any proceedings, other than such proceedings as may be necessary to consummate or enforce the Stipulation, or in an action or proceeding to determine the availability, scope, or extent of insurance coverage (or reinsurance related to such coverage) for the sums expended for the settlement and defense of this Action.

(11) The Action is dismissed with prejudice, subject, however, to this Court retaining jurisdiction over compliance with the Stipulation and this Final Judgment.

(12) The Court hereby bars: (i) all future claims for contribution arising out of the Action or Released Claims by any Person against the Released Defendants; and (ii) all future claims for contribution relating to the institution, prosecution, or settlement of the Action or the Released Claims by any Person against Plaintiffs and Plaintiffs' Counsel.

(13) Nothing in this Final Judgment constitutes or reflects a waiver, release or discharge of any rights or claims of Released Defendants against their insurers, or their insurers' subsidiaries, predecessors, successors, assigns, affiliates, or representatives. Nothing in this Final Judgment constitutes or reflects a waiver or release of any rights or claims relating to indemnification, advancement, or any undertakings by an indemnified party to repay amounts advanced or paid by way of indemnification or otherwise.

(14) In the event that the Stipulation is terminated in accordance with its terms: (i) this Final Judgment shall be rendered null and void and shall be vacated *nunc pro tunc*; and (ii) this Action shall proceed as provided in the Stipulation.

(15) There is no just reason for delay, and this is a final, appealable order as of when it is stamped as received for filing.

(16) Final judgment shall be entered herein.

IT IS SO ORDERED.

Dated this __17th__ day of February, 2016.


ROBERT W. PRATT, Judge
U.S. DISTRICT COURT

16

*Young v. Wells Fargo*

## Requests for Exclusion Received as of January 13, 2016

## Previously Provided Exclusion Requests

| # | GCG ID # | Requestor(s) |
|---|----------|--------------|
| 1. | 14704 | SENKA AND JASMIN BURZIC |
| 2. | 16266 | LINDA CLAYTON |
| 3. | 1022134 | SYLVIA C SMITH |
| 4. | 1022193 | SCOTT D FAILING |
| 5. | 1145738 | KELVIN KING |
| 6. | 1254060 | MICHELLE TSOLAKIS |
| 7. | 1327921 | ISAAC MOSER |
| 8. | 1456640 and 40168558 | CARL A MICK JR and BARBARA J MICK |
| 9. | 1460263 | BARBARA A GUTHRIE |
| 10. | 1507444 | JOHN RICHARD BEGG |
| 11. | 1532217 | Horatio Miller on behalf of ESTATE OF ELEANOR A MILLER |
| 12. | 1614754 | VUONG NGUYEN |
| 13. | 1678238 | LALITA DIOTRAGOOL |
| 14. | 1680195 | KRISTY KOZAKA |
| 15. | 1732641 | VICTORIA RHOADES |
| 16. | 1741724 | GARY GREEN |
| 17. | 1744741 and 1744743 | LISA SAMUELS |
| 18. | 1798202 | NIKOLAY COATES |
| 19. | 1919784 | ARLENE STRICKLAND |
| 20. | 1931815 | CORY CARR |
| 21. | 1949568 and 40225866 | Pamela A Capen on behalf of ESTATE OF CHARLES R OLIN JR and ESTATE OF BERNETA T OLIN |
| 22. | 1959815 and 40275294 | JOHN NORTON-GRIFFITHS and MARILYNN NORTON-GRIFFITHS |
| 23. | 2010691 | ESTATE OF RAY C HUGHES |
| 24. | 2018190 | NICHOLAS DONOFRIO |
| 25. | 2085702 | ALEXANDER D J ROOS |
| 26. | 2115162 | BARBARA HARRIS |
| 27. | 2146284 | TIFFANY TATE |
| 28. | 2174020 and 40339717 | JUAN CARLOS CAYCHO PORRAS and AZUCENA D ALCALDE MARCELO |
| 29. | 2196644 | DOUGLAS A PURKEY |

| # | GCG ID # | Requestor(s) |
|---|---|---|
| 30. | 2270568 | Karen Hicks on behalf of ESTATE OF DONNA H HICKS |
| 31. | 2275169 | JUDITH ELAINE NIELSON |
| 32. | 2308822 | Georgia Springer on behalf of ESTATE OF EUGENE F SPRINGER |
| 33. | 2347557 | GLADYS MARIA MARIL |
| 34. | 2350795 | RITA THOMAS |
| 35. | 2389828 | ESTATE OF ORVILLE GRAHAM |
| 36. | 2435353 | Jacqueline Novak on behalf of ESTATE OF GARRY K NOVAK |
| 37. | 2491684 | Tanya Guthrie on behalf of ESTATE OF JACQUELINE GUTHRIE |
| 38. | 2510989 | ONOFRIO BARTOLONE |
| 39. | 2577828 and 40443366, 2577902 and 40443513 | STEPHEN E PENNER and LII M PENNER |
| 40. | 2641392 | AZILE ROSE |
| 41. | 2716675 | JOSEPHINE STRINGER |
| 42. | 2724143 | LESLIE AHR |
| 43. | 2845365 and 40517874 | JIMMY E HYATT JR and EVA M HYATT |
| 44. | 2986505 | JESSE STRICKLAND |
| 45. | 3005281 | CRYSTAL PENNINGTON |
| 46. | 3085446 | BARBARA A (BRABY) BURNS |
| 47. | 3242834 | JARED HAMANN |
| 48. | 3267144 | CHERYL A GRAVES |
| 49. | 3273238 and 40578374 | GLENN G GILBERT and SHARON L GILBERT |
| 50. | 3333183 | Lynda L Fraser on behalf of PETER J FRASER |
| 51. | 3338518 | CAROL A HUNTE |
| 52. | 3382883 | KYOKO CHAPELL |
| 53. | 3414926 and 40685908 | J CLAUDE CRUMLEY III and ANDREA CRUMLEY |
| 54. | 3423261 and 40696510 | JAMES SCHWOEGLER and DEBRA SCHWOEGLER |
| 55. | 3441851 | DONALD A KRISTA |
| 56. | 3468765 | TAMMY ACUFF |
| 57. | 3487114 | ESTATE OF DAVID BURROWS |
| 58. | 3503738 | MARIE-ANGE FLEURANT |
| 59. | 3604867 | LINDA L GERNAEY |
| 60. | 3610008 | JACK HICKLE |

| # | GCG ID # | Requestor(s) |
|---|----------|--------------|
| 61. | 3644620 | KAY L HARAGUCHI |
| 62. | 3661821 | ARAMIS ARJONA |
| 63. | 3717827 | BARBARA R PORTER |
| 64. | 3765742 | JONAE BERTAPELLE |
| 65. | 3794474 | SONIA PITA |
| 66. | 3818193 | LINDA SHIFFLETT |
| 67. | 3844353 | DENISE JUANICO |
| 68. | 3901770 and 40872557 | KEVIN J TUMINSKI and NOREEN TUMINSKI |
| 69. | 3934930 | LOUNISE GEORGE |
| 70. | 3948181 | GEORGE J LAWLER |
| 71. | 4024655 | CAROL J FAWVER |
| 72. | 4048356 | MARGARET RODRIGUEZ |
| 73. | 4165914 | ESTATE OF KARIN LEA KOTSCHWAR |
| 74. | 4183410 | CATALINA M PALAGANAS |
| 75. | 4259950 | ERIN K DEPAYNE |
| 76. | 4290938 and 40960674 | RALPH VETRANO, DECEASED and CONSTANCE VETRANO |
| 77. | 4294351 | CAROL TASSIN |
| 78. | 4313704 and 41032293 | JOHN P CANTRELL and REBECCA D CANTRELL |
| 79. | 4358878 | UDAYAN PATEL |
| 80. | 4403666 and 40978535 | PAMELA M SHEDD and GEORGE P SHEDD JR |
| 81. | 4639819 | JO ANN DIALE |
| 82. | 40151723 | MARIE N DUEMAN |
| 83. | 40485138 | MARY JO HORNE |
| 84. | 40486639 | MELISSA CHARTIER |
| 85. | 40659680 | SANDRA L SPAGNOLA |
| 86. | 40948769 | JANN GRISMORE |

# Exclusion Requests Received after December 7, 2015

| # | GCG ID # | Requestor(s) |
|---|---|---|
| 87. | 17305 | SUSAN GULLER |
| 88. | 17308 | INEZ WILLIAMS |
| 89. | 17323 | TATIANA SALAZAR |
| 90. | 1001052 and 40001038, 1016076 and 40066225 | ALLEN M GUNN and DONNA L GUNN |
| 91. | 1058072 | GLORIA M JEFFERSON |
| 92. | 1083829 | MATTHEW W DIAMOND |
| 93. | 1182523 | DERRICK KIENER |
| 94. | 1190489 and 40051221 | EDWARD R PALANGE and DONNA D PALANGE |
| 95. | 1236199 | EMILY MEADS |
| 96. | 1316802, 3810975, and 40878170 | JASON COVERT and DANA GRANT-COVERT |
| 97. | 1385800 | THOMAS HEINRICH |
| 98. | 1488439, 1489537, and 2288466 | LORETTA R ADAMO |
| 99. | 1570023 | JENNIFER WOLFE (HATCHER) |
| 100. | 1600954 | MICHELE FERRARO |
| 101. | 1639594 | BECKI MAAS |
| 102. | 1651616 | PEDRO MONCADA |
| 103. | 1674175 | ANNETTE GRIFFIS-CARTER |
| 104. | 1699164 | MYRNA PEREZ |
| 105. | 1701569 | DIANE D THURBON |
| 106. | 1717187 | REESHEMA BRITT |
| 107. | 1721719 | BRIAN LANGILLE |
| 108. | 1848931 | PHYLLIS GILROY |
| 109. | 1868261 | WILLIAM W MOORE |
| 110. | 1883143 | MARGARITO CHAVERA |
| 111. | 1937427 | JULIE B O'STEEN |
| 112. | 1947309 | ESTELA MARTINEZ |
| 113. | 2005262 | WD CARMICHAEL |
| 114. | 2016301 | ALICE ROSEBORO |
| 115. | 2108375 | Linda Clayton on behalf of ESTATE OF MAMIE CLAYTON |
| 116. | 2144435 and 40328386 | MICHELLE A THOMANN and DONALD G THOMANN SR |
| 117. | 2188248 and 4307235 | KAREN L CLANCY |
| 118. | 2253042 and | KURT L HUDSON |

| # | GCG ID # | Requestor(s) |
|---|----------|--------------|
|  | 3004817 |  |
| 119. | 2260926 | CARI FESSLER |
| 120. | 2329309 | TAMARA ROTHANBURG |
| 121. | 2409370 | DIANNE E O'DONNELL |
| 122. | 2455614 | SHELLEY HAMDY |
| 123. | 2492354 | Carol Bergren on behalf of ESTATE OF GERALDINE BERGREN |
| 124. | 2495622 | DIANE L TRUJILLO |
| 125. | 2497026 and 40391890 | BRANDON GERST and JESSICA M GERST |
| 126. | 2511041 | Paul Scalora on behalf of ESTATE OF ANGELA SCALORA |
| 127. | 2522746 | DONALD J HOLLAND |
| 128. | 2553037 | ANTHONY V AMORUSO JR |
| 129. | 2563760 | Donna I Larkin on behalf of BOBBI J KING |
| 130. | 2574383 | DENISE C NEJEDLIK |
| 131. | 2620914 | CARLA ORLANDI and GREGORY ORLANDI |
| 132. | 2718868 | CHRISTINE M HATCH |
| 133. | 2757643 | MICHAEL P RUBIC |
| 134. | 2821185 | JANET PASCHETTE |
| 135. | 2850997 | JAMES CORBETT |
| 136. | 2922709 | CHARLES HANSHAW and CHARLOTTE HANSHAW |
| 137. | 2998478 | CAROL J WEYER |
| 138. | 3004195 | ERIC ACHEN |
| 139. | 3023741 | CARLOS ROBLES |
| 140. | 3146921 and 3150774 | NICOLE ROBINSON |
| 141. | 3204454 | CYRIL J TREADWAY |
| 142. | 3226904 | JAMES P MCGINNIS |
| 143. | 3287193 | PAMELA S FIELDS |
| 144. | 3287377 | Tara L O'Keefe on behalf of ESTATE OF GLORIA T HUME |
| 145. | 3364452 and 40639319 | EMMANUEL ACEVEDO and LAUREN ACEVEDO |
| 146. | 3409477 and 40661258 | DAVID NELSON and CAROLYN NELSON |
| 147. | 3503033 | CHRISTINE E WHITE |
| 148. | 3543895 | OLLIE M BEASLEY |
| 149. | 3592785 | ADAM P TROY |
| 150. | 3593520 | WILLIAM E SHAW JR |
| 151. | 3603922 | ALFREDO LOPEZ |

| # | GCG ID # | Requestor(s) |
|---|---|---|
| 152. | 3628029 | MARY OLENE BERRY |
| 153. | 3730193 | DEMETRIUS R GRAY |
| 154. | 3958558 | AARON T DIAMOND |
| 155. | 3993286 | THOMAS WHITE |
| 156. | 4027985 | TORREY SHEPHERD |
| 157. | 4143901 | MANUEL MARTINEZ |
| 158. | 4160866 | TOMMY L WAGNER |
| 159. | 4166656 | WAYNE E KOOP |
| 160. | 4221233 | JENNIFER EAKER |
| 161. | 4231385 and 40995422 | ROBERT SCHIAPPA and PATRICIA SCHIAPPA |
| 162. | 4268138 | GAIL M MORSER |
| 163. | 4277468 | PRISCILLA R MECKLEY |
| 164. | 4325203 and 41030511 | HOWARD SHELTON and CINDY SHELTON |
| 165. | 4334483 | GAIL A PATES |
| 166. | 4391362 and 40973023 | HOWARD COLLINS JR and ANGELIA COLLINS |
| 167. | 4392343 | NANCY S WALTZ |
| 168. | 4426127 | THERESA MARSHALL |
| 169. | 4459102 and 40977127 | ANDREW CONKLIN and ANNE CONKLIN |
| 170. | 4559997 | JOE BOTTOMS |
| 171. | 4636121 and 41061289 | ALLEN K MILLAY and ELISA J MILLAY |
| 172. | 4679927 | KATINA DEGRAFTENREED |
| 173. | 4794341 and 41083334 | ALAN W DEETERS and MARY E DEETERS |
| 174. | 4834594 | BRAYLON HAYNES |
| 175. | 4855983 | Marcus E Brown on behalf of ESTATE OF BARBARA A BROWN |
| 176. | 40634439 | MARY SUE SCHLENSKER |
| 177. | 40968235 | MELISSA A MCDONALD |

## Late Exclusion Requests Received

| # | GCG ID # | Requestor(s) |
|---|---|---|
| 178. | 1127547 and 40013291 | NICHOLAS WALKER  and NANCY WALKER |
| 179. | 2356401 | JOYCE EKLUND |
| 180. | 3021510 | KAYODE POWELL |
| 181. | 4404407* | ESTATE OF ROSARIO RAPISARDI |

*The total count of GCG ID numbers is 219.

claims. The Court grants the following awards which shall be paid out of the settlement amount.
attorney fees of $8,583,332.48 and litigation expenses of $211,042.23 to class counsel; and awards of
$10,000 each to named plaintiffs Edward Huyer, Jr., Connie Huyer, Carlos Castro, and Hazel P. Navas.

Date:  February 17, 2016                    CLERK, U.S. DISTRICT COURT

                                            /s/ Donnell Vance

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

Edward Huyer, Connie Huyer,
Carlos Castro, and Hazel P. Navas

        Plaintiff                     JUDGMENT IN A CIVIL CASE

v

                                  CASE NUMBER:   4-08-cv-507

Wells Fargo Bank, N.A. and  Wells
Fargo & Co.

        Defendant

○ JURY VERDICT . This action came before the Court for trial by jury.  The issues have been tried and the jury has rendered its verdict.

◉ DECISION BY COURT.  This action came before the Court.  The issues have been considered and a decision has been rendered.

IT IS ORDERED AND ADJUDGED:

The settlement agreement provides that Wells Fargo shall pay $25,750,000 in full settlement of all class claims.  The Court grants the following awards which shall be paid out of the settlement amount: attorney fees of $8,583,332.48 and litigation expenses of $211,042.23 to class counsel; and awards of $10,000 each to named plaintiffs Edward Huyer, Jr., Connie Huyer, Carlos Castro, and Hazel P. Navas.

Date:   February 17, 2016              CLERK, U.S. DISTRICT COURT

                                /s/ Donnell Vance
                                _____
                                By: Deputy Clerk

**Wells Fargo**

**VERY IMPORTANT NOTE:**

**BEFORE YOU ENTER INTO ANY SETTLEMENT NEGOTIATIONS HAVE A WRITTEN EXCHANGE EG EMAIL THAT SETTLEMENT NEGOTIATIONS ARE CONFIDENTIAL.**

**ALWAYS NEGOTIATE RELIEF POINTS FOR THE CLASS MEMBERS FIRST AND ONLY AFTER THERE IS AN AGREEMENT ON RELIEF CAN YOU DISCUSS FEES**

**Relief Points**

- Eliminate the distinction between Paid-in-Full Class Members and Post-Sale Class Members by providing automatic payments to all Class Members without the need to submit claims forms or proof of payment.
- The claims process is too complicated so to make up for the complexity all claims should be accepted and the claims period should be extended by 90 days.
- Administrator should update the website regarding status of case especially with respect to claims payouts on a regular basis.

**Fees**

$2,500 for the client and $100,000 in attorney fees